## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Ciapessoni *et al.*, on behalf of themselves and all others similarly situated,**<br><br>                 Plaintiffs,<br>          v.<br><br>**The United States of America**,<br><br>                 Defendant. | Case No. 15-938C<br>Hon. Thomas C. Wheeler |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### <u>MOTION TO CERTIFY CLASS ACTION</u>

# **TABLE OF CONTENTS**

                                                                                                            **Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ......................................................................................................................... 5

I.      The Proposed Classes Are Sufficiently Numerous ............................................. 5

II.    The Proposed Classes Share a Predominate, Common Question of Law Arising from Action by the United States That Was Generally Applicable to the Proposed Classes................................................................................................................. 6

        A.    *Questions of Law or Fact are Common to the Classes*.......................... 7

        B.    *The United States Has Acted on Grounds Generally Applicable to the Classes* ................................................................................................... 8

        C.    *Common Questions of Law or Fact Predominate Over Individual Questions*................................................................................................ 8

III.   Plaintiffs' Claims Are Sufficiently Typical ........................................................ 9

IV.   The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Classes............................................................................................................... 10

        A.    *Plaintiffs Are Represented by Experienced Counsel* ........................... 10

        B.    *Potential Class Members Have No Conflict of Interest*....................... 12

V.    A Class Action Is a Superior Method for Fair and Efficient Resolution ......................... 12

CONCLUSION.................................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barnes v. United States*,
    68 Fed. Cl. 492 (Fed. Cl. 2005) ..............................................................................4, 5, 9, 10, 12

*Bigelow Trust v. United States*,
    97 Fed. Cl. 674 (Fed. Cl. 2011) .......................................................................................................7

*Fisher v. United States*,
    69 Fed. Cl. 193 (Fed. Cl. 2006) ....................................................................................................7, 9

*Geneva Rock Prods. v. United States*,
    100 Fed. Cl. 778 (Fed. Cl. 2011) ...............................................................................................5, 6, 13

*Gregory v. United States*,
    No. 09-114L, 2009 U.S. Claims LEXIS 781 (Fed. Cl. Oct. 5, 2009) ........................7, 8, 12, 13

*Haggart v. United States*,
    89 Fed. Cl. 523 (Fed. Cl. 2009) ................................................................................................6, 8, 12

*Horne v. Dep't of Agric.*,
    135 S. Ct. 2419 (2015) ............................................................................................................... passim

*King v. United States*,
    84 Fed. Cl. 120 (Fed. Cl. 2008) ................................................................................................... passim

*Lion Farms, LLC v. United States of America*,
    No. 15-915C (Fed. Cl. 2015) ........................................................................................................6

*Singleton v. United States*,
    92 Fed. Cl. 78 (Fed. Cl. 2010) .......................................................................................................7

*Starr Int'l Co. v. United States*,
    109 Fed. Cl. 628 (Fed. Cl. 2013) ................................................................................................ passim

*Sun-Maid Growers of Calif. v. Dept't of Agric. et al.*,
    No. 1:15-cv-00496 (D.D.C. 2015) ................................................................................................11

*Toscano v. United States*,
    98 Fed. Cl. 152 (Fed. Cl. 2011) .....................................................................................................9

**Statutes**

7 U.S.C. § 602 (2012) ................................................................................................................2

7 U.S.C. § 608c (2012) ...................................................................................................................2

7 U.S.C. § 608c(6)(E) (2012) .........................................................................................................2

**Other Authorities**

7 C.F.R. pt. 989 ..............................................................................................................................1

7 C.F.R. §§ 989.14 .........................................................................................................................3

7 C.F.R. §§ 989.15 .........................................................................................................................3

7 C.F.R. §§ 989.54 .....................................................................................................................1, 2

7 C.F.R. §§ 989.55 .....................................................................................................................1, 2

7 C.F.R. §§ 989.65-.72 ...................................................................................................................1

7 C.F.R. § 989.66 .......................................................................................................................2, 3

14 Fed. Reg. 5136 (Aug. 18, 1949) ................................................................................................2

74 Fed. Reg. 9951 (March 9, 2009) ...............................................................................................3

74 Fed. Reg. 44269 (Aug. 28, 2009) ..............................................................................................3

75 Fed. Reg. 35959 (June 24, 2010) ..............................................................................................3

RCFC 23(a) ............................................................................................................................ passim

RCFC 23(b) ............................................................................................................................ passim

RCFC 23(g) ...................................................................................................................................10

U.S. Const. amend. V ............................................................................................................ passim

**INTRODUCTION**

This case presents a prototypical class action. The class representatives are individuals and partnerships engaged in the business of growing raisins. Like all California raisin growers in the proposed class, each representative's raisins have been subject to regulation under the California Raisin Marketing Order, 7 C.F.R. pt. 989 ("Marketing Order"). The Marketing Order contains reserve-pool provisions that permitted the United States Department of Agriculture ("USDA") to require growers to turn over a certain percentage of their crop to the government, free of charge. 7 C.F.R. §§ 989.54-.55; .65-.72. The United States Supreme Court recently held that this reserve requirement, when imposed, constituted "a clear physical taking" without just compensation in violation of the Fifth Amendment. *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2428 (2015).

The class representatives and proposed class members have had their raisins taken by the federal government without just compensation through the imposition of reserve pools in prior crop years. Accordingly, pursuant to Court of Federal Claims Rule 23 and to facilitate recovery of just compensation for all raisin growers, plaintiffs move to certify a class consisting of "all raisin growers whose raisins were set aside for the account of the Raisin Administrative Committee ("RAC") pursuant to the Marketing Order's reserve-pool requirement." *See* Compl. ¶ 32. Plaintiffs also move to certify a subclass consisting of "all raisin growers whose raisins were set aside for the account of the RAC pursuant to the Marketing Order's reserve-pool requirement in crop years 2006-07, 2007-08, 2008-09, and 2009-10." Under both classes, the United States' liability turns upon one predominate, predicate question, which all class representatives and proposed class members share and which the *Horne* Court decided: Whether the Marketing Order's reserve requirement effects a taking under the Fifth Amendment for which just

compensation is due. This question is ideally suited for class-action resolution, and this Court should therefore certify plaintiffs' proposed classes.

## BACKGROUND

The Agricultural Marketing Agreement Act of 1937 ("AMAA") directs the Secretary of Agriculture to issue "marketing orders" regulating the marketing and sale of agricultural commodities. 7 U.S.C. § 608c (2012). Such marketing orders may provide "for the establishment of reserve pools" of a commodity. 7 U.S.C. § 608c(6)(E) (2012). A "reserve pool" permits the Secretary to limit the supply of an agricultural commodity that reaches the commercial market in a given year by, for example, withholding a percentage of the yearly crop. *See* 7 U.S.C. § 602 (2012). Using the AMAA's authority, the Secretary of Agriculture issued the Marketing Order in 1949. 14 Fed. Reg. 5136 (Aug. 18, 1949).

The Marketing Order provides for such reserve pools. The size of a crop year's reserve pool is designated by the Secretary, who considers recommendations from the RAC. 7 C.F.R. §§ 989.54-.55. If a reserve pool is recommended, the USDA usually implements it via issuance of a final rule. *Id.* § 989.55. Such rule establishes the percentage of that year's raisins that must be designated as "reserve tonnage" versus "free tonnage." Free-tonnage raisins can be sold in commercial markets; reserve-tonnage raisins must be held "for the account" of the RAC. 7 C.F.R. § 989.66(a).

In this way, the RAC ultimately "acquires title to the reserve raisins that have been set aside, and decides how to dispose of them in its discretion." *Horne*, 135 S. Ct. at 2424. The RAC may sell reserve-tonnage raisins "in noncompetitive markets," "donate[] them to charitable causes," "release[] them to growers who agree to reduce their raisin production," or "dispose[] of them by 'any other means' consistent with the purposes of the raisin program." *Id.* (quoting 7 C.F.R. § 989.67(b)(5)).

Raisin growers deliver their crop each year to handlers, who clean, stem, sort, pack, market, and sell these raisins in commercial channels. *See* 7 C.F.R. §§ 989.14-.15. When a reserve pool is imposed, handlers must separate "reserve-tonnage" raisins delivered by growers and store them "for the account" of the RAC.[1] 7 C.F.R. § 989.66(a). Handlers pay growers for free-tonnage raisins, but not for reserve-tonnage raisins.

A reserve pool was frequently imposed up to and including the 2009-2010 crop year. For example, the reserve-tonnage requirement was set at 47% of growers' crops in the 2002-03 crop year, 30% in 2003-04, 17.5% in 2005-06, 10% in 2006-07, 15% in 2007-08, 13% in 2008-09, and 15% in 2009-10. *Horne*, 135 S. Ct. at 2421; 74 Fed. Reg. 9951, 9954 (March 9, 2009); 74 Fed. Reg. 44269, 44270 (Aug. 28, 2009); 75 Fed. Reg. 35959, 35960 (June 24, 2010). When the USDA deprived growers of their property, growers received no compensation.

Plaintiffs delivered raisins during the relevant years to handlers, who, pursuant to the requirements of the Marketing Order, set them aside and stored them for the account of the RAC. Plaintiffs did not receive just compensation for such reserve-tonnage raisins. *See* Compl. ¶¶ 28-29; *see also* Declarations of Bruce Ciapessoni, Elisa Ciapessoni, Bob F. Hansen, Sharon Kiseloff, and Eldora Rossi (collectively, "Plaintiffs' Declarations").[2] Pursuant to the Supreme Court's *Horne* decision, the reserve-pool requirement imposes a taking for which just compensation is due. 135 S. Ct. at 2428. On behalf of themselves and their proposed class members, plaintiffs therefore bring this action to obtain just compensation for the government's physical taking of their raisins.

---

[1] Where growers "handle" their own raisins, they must separate the designated reserve-tonnage percentage from their own crop and store these raisins "for the account" of the RAC. 7 C.F.R. § 989.66(a).

[2] Plaintiffs' Declarations are appended hereto.

**LEGAL STANDARD**

Class certification is appropriate where, as here, plaintiffs can satisfy the requirements of Court of Federal Claims Rules 23(a) and 23(b). Under RCFC 23(a), a class may be established where (1) "the class is so numerous that joinder of all members is impracticable;" (2) "there are questions of law or fact common to the class;" (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) "the representative parties will fairly and adequately protect the interests of the class." If these requirements are satisfied, RCFC 23(b) permits a class action to be maintained if (1) "the United States has acted or refused to act on grounds generally applicable to the class;" and (2) "the court finds that the questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Relevant to this determination is (1) "the class members' interests in individually controlling the prosecution of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by class members;" and (3) "the likely difficulties in managing a class action." RCFC 23(b)(A)-(D).

These requirements have "been distilled to five requirements: numerosity, commonality, typicality, adequacy, and superiority." *Starr Int'l Co. v. United States*, 109 Fed. Cl. 628, 632 (Fed. Cl. 2013). Plaintiffs need only demonstrate each element "by a preponderance of the evidence." *Id.* "In the interests of judicial economy and efficiency, however, courts construe the requirements of Rule 23 liberally, 'or at least not narrowly,' in favor of class certification." *Id.* (quoting *Barnes v. United States*, 68 Fed. Cl. 492, 502 (Fed. Cl. 2005)).

**ARGUMENT**

Plaintiffs seek certification of a class consisting of "all raisin growers whose raisins were set aside for the account of the RAC pursuant to the Marketing Order's reserve-pool requirement." *See* Compl. ¶ 32. Plaintiffs also move to certify a subclass consisting of "all raisin growers whose raisins were set aside for the account of the RAC pursuant to the Marketing Order's reserve-pool requirement in crop years 2006-07, 2007-08, 2008-09, and 2009-10." As the following demonstrates, these classes meet all the requirements of RCFC 23 and should therefore be certified.

**I.     The Proposed Classes Are Sufficiently Numerous**

Numerosity is demonstrated where a "class is so numerous that joinder of all members is impracticable." RCFC 23(a)(1). The number of potential class members is the most significant consideration when evaluating the practicality of joinder, but courts also consider the size of each individual claim. *See King v. United States*, 84 Fed. Cl. 120, 124 (Fed. Cl. 2008). Additionally, "joinder need only be impracticable, not impossible." *Barnes*, 68 Fed. Cl. at 495.

"[G]enerally, if there are more than forty potential class members, this prong has been met." *King*, 84 Fed. Cl. at 124; *see also Geneva Rock Prods. v. United States*, 100 Fed. Cl. 778, 787 (Fed. Cl. 2011) ("In one popular view, any class larger than 40 is assumed to be sufficiently numerous."). Here, there are approximately 3,000 California raisin growers. *See* Declaration of Richard Stark ("Stark Decl.") ¶ 7. Because the number of growers has declined over the past decade, there have been at least 3,000 raisin growers in the industry each year for at least the past decade. *See* Stark Decl. ¶ 7. When imposed, the reserve requirement affects all growers' raisins produced for delivery or sale. *See* Stark Decl. ¶ 5. Accordingly, there are more than 3,000 raisin growers whose raisins have been subject to a reserve-pool requirement in each year in which such a requirement was imposed over the past decade alone. This satisfies any numerosity

standard. *See, e.g.*, *Haggart v. United States*, 89 Fed. Cl. 523, 532 (Fed. Cl. 2009) (certifying class of approximately 750 members in takings case); *King*, 84 Fed. Cl. at 124 (certifying class of at least 152 members); *see also Geneva Rock Prods.*, 100 Fed. Cl. at 788 (certifying class of 23 members in takings case).

"Another factor in determining numerosity is whether the size of each individual plaintiff's claim hinders the ability of a plaintiff to file any action at all." *King*, 84 Fed. Cl. at 125; *see also Haggart*, 89 Fed. Cl. at 532 (finding that "[a]bsent class certification, potential class members may be discouraged from or unable to pursue their individual claims against the government"). Here, many growers' claims are small relative to the costs necessary to pursue such claims. That is, many raisin growers are individuals who farm small plots of land or produce a larger percentage of other commodities. Stark Decl. ¶ 8. For these growers, the amount of their reserve-tonnage raisins in a given crop year's reserve pool may be very small. As a result, the attorneys' fees and other costs of bringing an individual claim to receive just compensation for that small quantity of raisins would hardly justify its pursuit. A class action is therefore the only vehicle by which many class members will be able to bring their respective claims.[3] The numerosity requirement is therefore satisfied.

**II.     The Proposed Classes Share a Predominate, Common Question of Law Arising from Action by the United States That Was Generally Applicable to the Proposed Classes**

Commonality is evaluated under three sub-elements:

> RCFC 23(a)(2) requires that there be questions of law or fact common to the class; RCFC 23(b)(2) requires that the United States has acted or refused to act on grounds generally applicable to the class; and RCFC 23(b)(3) requires that the

---

[3] This is best demonstrated by the lawsuits that have been filed since *Horne* was decided. Lion Farms, the largest California raisin grower, has filed the only individual complaint with this Court seeking just compensation for reserve-tonnage raisins. *See Lion Farms, LLC v. United States of America*, No. 15-915C (Fed. Cl. 2015).

questions of law and fact common to class members predominate over questions particular to individual class members.

*Singleton v. United States*, 92 Fed. Cl. 78, 84 (Fed. Cl. 2010). The threshold to establish commonality is "'not high.'" *King*, 84 Fed. Cl. at 125 (quoting *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986)). That threshold is established here.

### A.   *Questions of Law or Fact are Common to the Classes*

This inquiry is satisfied when "there is at least 'one core common legal question that is likely to have one common defense.'" *King*, 84 Fed Cl. at 125 (quoting *Fisher v. United States*, 69 Fed. Cl. 193, 199 (Fed. Cl. 2006). Here, all class members' claims turn upon one common, overarching legal question: Whether the Marketing Order's reserve requirement effects a taking under the Fifth Amendment for which just compensation is due. Resolution of this issue will affect all proposed class members equally by determining their entitlement to just compensation for prior years' reserve-tonnage raisins.[4] *See, e.g.*, *Starr Int'l Co.*, 109 Fed. Cl. at 633 (finding commonality where resolution of takings issue "will affect all putative class members"); *Bigelow Trust v. United States*, 97 Fed. Cl. 674, 678 (Fed. Cl. 2011) (finding commonality where "all plaintiffs share the same core legal question: did a Fifth Amendment taking occur"); *Gregory*, 2009 U.S. Claims LEXIS 781, at *6 (finding commonality where "[a] common question of law exists on whether a taking under the Fifth Amendment occurred"). In this way, "the claims of the members within each putative class are based on the same exact government action" (*i.e.*, the

---

[4] While class members will thereafter be entitled to varying damages, depending upon the tonnage of raisins taken by the government, this individual inquiry cannot undermine class certification. *See Starr Int'l Co.*, 109 Fed. Cl. at 634; *Gregory v. United States*, No. 09-114L, 2009 U.S. Claims LEXIS 781, at *6 (Fed. Cl. Oct. 5, 2009) ("Any just compensation warranted by the actions of the United States may vary between class members. However, such variation is insufficient to defeat this element.").

7

taking of raisins by way of the Marketing Order's reserve requirement). *Starr Int'l Co.*, 109 Fed. Cl. at 633. Accordingly, commonality exists.

### B.   *The United States Has Acted on Grounds Generally Applicable to the Classes*

The second element of demonstrating commonality requires showing that "the United States . . . acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(2). Here, the USDA's implementation of a reserve pool in prior crop years affected all proposed class members and forms the wellspring of their claims. Accordingly, this inquiry is met.

### C.   *Common Questions of Law or Fact Predominate Over Individual Questions*

The final element to demonstrate commonality requires showing that "[c]lass-wide factual or legal questions predominate over specific, individual issues of class members." *Starr Int'l Co.*, 109 Fed. Cl. at 633. The predominance inquiry is satisfied where resolution of common issues "can be achieved through generalized proof and are more substantial than specific, individualized issues." *Id.* Here, the proposed class members' claims turn upon a predominate, predicate question: Whether the Marketing Order's reserve requirement effects a taking under the Fifth Amendment for which just compensation is due. All proposed class members share this issue, and it can be resolved via generalized proof applicable to the entire class. This is sufficient to demonstrate predominance. *See, e.g.*, *Starr Int'l Co.*, 109 Fed. Cl. at 634 (finding predominance where "[a]ll members of the putative class share the same core legal question"); *Gregory*, 2009 U.S. Claims LEXIS 781, at *6 (finding predominance where "[t]he predominant question" was "whether the United States committed a taking"); *Haggart*, 89 Fed. Cl. at 533 (finding predominance where "the determinative question" was whether a taking occurred).

Further, there are few factual differences among the proposed class members. All are raisin growers whose yearly crop was subject to the Marketing Order. All had raisins grown by them held "for the account" of the RAC based upon the imposition of a reserve requirement. All

8

received no compensation for such raisins. *See* Plaintiffs' Declarations. The only difference among proposed class members relates to the amount of their raisins "taken" by way of a reserve requirement. But this relates to damages and cannot defeat class certification. *See, e.g.*, *Toscano v. United States*, 98 Fed. Cl. 152, 155 (Fed. Cl. 2011) (finding commonality where "common issue certainly predominates over any individual variations such as differences of title or differing damages allegedly due"); *see also King*, 84 Fed. Cl. at 126; *Barnes*, 68 Fed. Cl. at 498. Accordingly, plaintiffs have met their burden as to the commonality factor.

### III.  Plaintiffs' Claims Are Sufficiently Typical

Class representatives' claims must also be "typical of the claims or defenses of the class." RCFC 23(a)(3). Claims are typical where they "share the same essential characteristics as the claims of the class at large." *Fisher v. United States*, 69 Fed. Cl. 193, 200 (Fed. Cl. 2006). This threshold is "also not high." *Id.*

Plaintiffs' claims are typical of those of the proposed classes. Plaintiffs are raisin growers whose crops were subject to the Marketing Order's reserve requirement up to and through the 2009-2010 crop year. *See* Plaintiffs' Declarations. Accordingly, when the United States imposed a reserve requirement, raisins grown by the plaintiffs were set aside and stored by handlers for the account of the RAC. Plaintiffs received no compensation for such raisins when the USDA took their raisins. *See id.* Plaintiffs' claims therefore turn upon whether the Marketing Order's reserve requirement effects a taking under the Fifth Amendment for which just compensation is due. Because the factual and legal bases for plaintiffs' claims are related to those of the proposed class, the typicality inquiry is satisfied. *See, e.g.*, *Starr Int'l Co.*, 109 Fed Cl. at 634 (finding typicality where class representatives' claims were "based on the same factual and legal predicates"); *Fisher*, 69 Fed. Cl. at 200 (finding typicality satisfied where "all prospective plaintiffs would be proceeding under essentially the same legal claim").

9

## IV. The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Classes

To evaluate adequacy of representation, "courts first consider the adequacy of class counsel and, second, ensure that class members do not 'have interests that are 'antagonistic' to one another.'" *King*, 84 Fed. Cl. at 127 (quoting *Barnes*, 68 Fed. Cl. at 499). Because counsel is qualified and there are no antagonistic interests between plaintiffs and the proposed class members, plaintiffs can adequately and fairly serve as class representatives.

### A. *Plaintiffs Are Represented by Experienced Counsel*

The named Plaintiffs are represented by experienced and highly skilled counsel who satisfy the requirements of RCFC 23. Rule 23(g)(1)(C) requires that "in appointing class counsel, the court (1) must consider the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class." RCFC 23(g)(1)(C). Plaintiffs are represented by the law firm McDermott Will & Emery, LLP, which is a full-service international law firm with more than 1,000 lawyers worldwide. Among these are the following attorneys dedicated to this litigation:

- M. Miller Baker is a partner in the firm and co-heads McDermott's appellate practice, with a particular expertise in constitutional litigation. Mr. Baker has more than 20 years of experience representing clients in federal and state courts nationwide, including in takings cases and cases in the Court of Federal Claims. Mr. Baker has received national recognition in *Chambers USA*, *The Legal 500 United States*, *Benchmark Litigation*, *Am Law Litigation Daily*, the *National Law Journal*, and *Super Lawyers* magazine. Mr. Baker has argued before the United States Supreme Court, the United States Courts of Appeals for the Second, Fourth, Fifth, Sixth, Seventh, Ninth, District of Columbia and Federal Circuits, and state appellate courts in Maryland, Florida, and New York. *See* Declaration of M. Miller Baker ¶¶ 1-4.

- Christopher M. Murphy is a partner in the firm and head of the firm's Class Action Group. Mr. Murphy focuses his practice on class actions, and has 25 years

> of experience litigating class actions in state and federal courts nationwide. Mr. Murphy has been repeatedly recognized in *Super Lawyers* magazine as a leading lawyer in the field of class actions. Mr. Murphy has also been recognized by *The Legal 500*. *See* Declaration of Christopher M. Murphy ¶¶ 1-4.

- Edward M. Ruckert is a partner in the firm and co-head of the firm's Food, Agriculture, and International Trade Group. Mr. Ruckert has more than 40 years of experience representing clients in a variety of regulated industries. A significant portion of Mr. Ruckert's practice involves assisting clients before the United States Department of Agriculture. In this capacity, Mr. Ruckert has represented a raisin cooperative in matters relating to the production, marketing, and sale of raisins, as well as in advocacy efforts related to the Marketing Order and its reserve requirements. Mr. Ruckert is the former chairman of the Agriculture Subcommittee of the American Bar Association's Section of Administrative Law and Regulatory Practice. Ed has been given the highest peer-rated "AV" rating by Martindale-Hubbell. *See* Declaration of Edward M. Ruckert ¶¶ 1-4.

Additionally, Mr. Baker presently represents a raisin cooperative in litigation against the USDA relating to the Marketing Order's reserve requirement,[5] and Mr. Baker and Mr. Ruckert served as counsel to *amici* Sun-Maid Growers of California and the Raisin Bargaining Association—collectively representing approximately 60% of all raisin growers—before the Supreme Court in *Horne*.[6] In sum, counsel possess substantial experience in constitutional, class action, and regulatory litigation, and have specific experience with the Marketing Order and its reserve-pool requirements. Supported by offices, lawyers, and administrative staff around the world, counsel possess the experience and resources to adequately represent the proposed classes.

Additionally, counsel have already conducted an initial investigation to determine the number and identity of potential class members, performed many hours of legal and factual

---

[5] *See Sun-Maid Growers of Calif. v. Dep't of Agric. et al.*, No. 1:15-cv-00496 (D.D.C. 2015) (seeking review under the Administrative Procedure Act of the USDA's denial of Sun-Maid's petition to initiate rulemaking immediately suspending and ultimately revoking the Marketing Order's reserve-pool provisions).

[6] *See* Brief for Sun-Maid Growers of California and the Raisin Bargaining Association as Amici Curiae Supporting the Respondents, *Horne v. Dep't of Agric.*, 135 S. Ct. 2419 (2015) (No. 14-275).

11

research to identify and evaluate potential claims, and drafted and filed the complaint in this case.

### B. *Potential Class Members Have No Conflict of Interest*

The interests of the named plaintiffs and potential class members are not antagonistic. Instead, the named plaintiffs and class members seek a common objective from an identical set of core facts and legal contentions. *See supra*, section II. Where the class representatives possess the same interest and objective and suffer the same injury as the class members, there is no conflict between them. *See, e.g.*, *Haggart*, 89 Fed. Cl. at 535 (finding adequacy established where "the interests of the named plaintiffs and the proposed class members are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same government actions"). In short, the class representatives and all class members "possess the same interest in receiving just compensation from the Government." *Gregory*, 2009 U.S. Claims LEXIS 781, at *8. Accordingly, the named plaintiffs can adequately and fairly represent the interests of the classes.

### V. A Class Action Is a Superior Method for Fair and Efficient Resolution

A class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). To determine whether superiority is established, "courts engage in 'a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action.'" *Starr Int'l Co.*, 109 Fed. Cl. at 636 (quoting *Barnes*, 68 Fed. Cl. at 499). This calculus weighs in favor of a class action where it "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Barnes*, 68 Fed. Cl. at 499; *Gregory*, 2009 U.S. Claims LEXIS 781, at *9.

A class action is the most efficient way to resolve this dispute. There are approximately 3,000 potential class members in either class, all of whom would otherwise be forced to file identical individual lawsuits with this Court. A class action would avoid such duplicative effort, and spare litigants and this Court the time and expense of multiple trials. It would also encourage efficiencies in common factual development and expert retention, and obviate the risk of inconsistent rulings. And because the putative class members are readily identifiable and must opt-in to the classes, there is unlikely to be any difficulty in managing the classes. A class action therefore presents a superior vehicle for resolution. *See, e.g.*, *Starr Int'l Co.*, 109 Fed. Cl. at 636 (finding class action superior where "all plaintiffs within each class are affected by the same government action"); *Geneva Rock Prods.*, 100 Fed. Cl. at 791 (finding superiority where class members "are readily identifiable and must affirmatively opt into the class," and class action "would resolve numerous claims in a single action, sparing the litigants the time and expense of multiple trials"); *Gregory*, 2009 U.S. Claims LEXIS 781, at *9 (finding superiority satisfied in proposed class of 450 members because "the Court and the parties would expend considerably more time, effort, and expenses" to adjudicate individual claims and a class action would "promote uniformity of decision").

///

///

///

///

///

///

## CONCLUSION

Because the proposed classes satisfy the requirements for class certification under RCFC 23(a) and 23(b), the undersigned respectfully requests that this Court: (1) certify the proposed classes and permit plaintiffs to proceed as representatives of these classes in their pursuit of just compensation for the taking of their property in violation of the Fifth Amendment to the United States Constitution; and (2) appoint the undersigned attorney of record as class counsel.

Dated: September 28, 2015                    Respectfully submitted,

                                          */s/ M. Miller Baker*
                                          M. Miller Baker*
                                          (mbaker@mwe.com)
                                          Edward M. Ruckert+
                                          (eruckert@mwe.com)
                                          McDermott Will & Emery LLP
                                          500 North Capitol Street, Northwest
                                          Washington, District of Columbia 20001
                                          T: 202.756.8000
                                          F: 202.756.8087

                                          Christopher M. Murphy+
                                          (cmurphy@mwe.com)
                                          McDermott Will & Emery LLP
                                          227 W. Monroe Street
                                          Chicago, IL 60606
                                          T: 312.372.2000
                                          F: 312.984.7700

                                          *\* Attorney of Record for Plaintiffs*
                                          *+ Of Counsel to Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify on September 28, 2015, I electronically filed the foregoing **Plaintiffs' Memorandum in Support of Motion to Certify Class Action** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ *M. Miller Baker*
M. Miller Baker