# Exhibit 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **Bruce Ciapessoni, Elisa Ciapessoni, Bob F. Hansen, Hansen Enterprises, R&H Agri-Enterprises, Eldora Rossi, Rossi & Ciapessoni Farms**, and **Rossi & Rossi**, on behalf of themselves and all others similarly situated,<br><br><br>Plaintiffs,<br><br><br>v.<br><br><br>**The United States of America,**<br><br><br>Defendant. | **No. 1:15-cv-00938-LAS**<br><br>**Hon. Loren A. Smith** |

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and among plaintiffs Bruce Ciapessoni,

Elisa Ciapessoni, Bob F. Hansen, Hansen Enterprises, R&H Agri-Enterprises, Eldora Rossi,

Rossi & Ciapessoni Farms, and Rossi & Rossi, on behalf of themselves and all other Settlement

Class Members, and defendant, the United States of America. The Parties intend that this

Settlement Agreement fully, finally, and forever resolves, discharges, and settles all claims

arising from or relating to this suit by Plaintiffs and all other Settlement Class Members on the

terms and conditions set forth herein. This Settlement Agreement is subject to the final approval

of the United States Court of Federal Claims in accordance with the Court's rules concerning

class actions.  The Parties stipulate to this Settlement Agreement for the sole purpose of fully

resolving this litigation and disposing of all the Released Claims, without any further judicial

proceedings and without there being any trial or adjudication of any issue of law or fact, and

without constituting an admission of liability on the part of the Defendant or an admission of any

issue of law or fact by any of the Parties, and for no other purpose.

## DEFINITIONS

1.      For purposes of this Settlement Agreement, which consists of this document and

its five Exhibits (*i.e.*, Exhibit A, Exhibit B, Exhibit C, Exhibit D, and Exhibit E) attached hereto,

the following definitions[1] shall apply:

> A.      "Affiliate Class Members" shall mean all the persons and entities,
> regardless of business form, that (a) satisfy the criterion set forth in
> Subparagraph F(a) of this paragraph; (b) do not satisfy any criterion set
> forth in Subparagraphs W(b)(i) and W(b)(ii) of this paragraph; (c) are not
> parties in *Lion Farms*; and (d) are members of Sun-Maid (including any
> individual or entity to whom any Sun-Maid member, in the member's
> capacity satisfying the aforementioned definition of "Class," assigned all or
> part of the member's raisins, or proceeds from the member's raisins,
> delivered during any of the Crop Years[2]) or of the RBA, both of which
> submitted opt-in forms on behalf of all their members—provided, however,
> that the Affiliate Class Members shall not include any person or entity that
> previously and expressly, in writing to Sun-Maid, the RBA, or Lead
> Counsel, declined to be included in the Settlement Class or that withdraws

---

[1] In this Settlement Agreement, all defined terms are capitalized, and definitions may be provided either in a parenthetical immediately following the defined term or in Paragraph 1 of the Settlement Agreement.  Also, in this Settlement Agreement, unless expressly stated otherwise, the singular form of any defined plural term is simply the singular grammatical form of that defined term—so that, for example, unless expressly stated otherwise "Affiliate Class Member" is simply the singular form of the defined term, "Affiliate Class Members," and "Party" is simply the singular form of the defined term, "Parties."  In this Settlement Agreement, all references to raisins refer to Natural Seedless raisins.

[2] For purposes of this definition of "Affiliate Class Members," regardless whether any given assignment is partial or total, any such Sun-Maid member assignor and each of the assignor's thus-described assignee is an Affiliate Class Member.

from the Settlement Class pursuant to Paragraph 46 of this Settlement Agreement.

B.  "Affiliate Notice Packet" shall mean a packet of documents, to be sent to each potential Affiliate Class Member, including an Affiliate Settlement Notice and a withdrawal form.

C.  "Affiliate Settlement Notice" shall mean the written notice provided in this Settlement Agreement's Exhibit D or any written notice, substantively identical to that exhibit, sent to any Affiliate Class Member.

D.  "*Boyajian*" and "*Hickman*" shall mean the class-action, related to this litigation, that was initially captioned as *Boyajian v. United States*, No. 15-1574C (Fed. Cl.), but later re-captioned as *Hickman v. United States*, No. 15-1574C (Fed. Cl.).

E.  "California Raisin Handling Order" shall mean the Order Regulating Handling of Raisins Produced from Grapes Grown in California, 7 C.F.R. §§ 989.1–989.95.

F.  "Class" shall mean the set of all persons and entities, regardless of business form, that both (a) are encompassed by the Court's definition, stated in Paragraph 16 of this Settlement Agreement, of the litigation class (which encompasses the litigation subclass, defined by the Court as stated in Paragraph 17 of this Settlement Agreement), and (b) properly and timely requested to be represented by Plaintiffs in this class-action litigation as members of (and in that way "opted in" to) that litigation class, in accordance with the Rules of the United States Court of Federal Claims and the Court's orders in this action.  For clarity and notwithstanding anything in this Settlement Agreement to the contrary:  For purposes of this Settlement Agreement, the Court's definitions of the certified litigation class and the certified litigation subclass in its May 11, 2017 order, as stated in Paragraphs 16 and 17 of this Settlement Agreement, are to be understood as identifying only the persons and entities eligible to be litigation class members and subclass members, respectively, that would be actual litigation class members and subclass members (if eligible) if and only if they thus properly requested to be represented in this litigation—so that, for purposes of this Settlement Agreement, all persons and entities so eligible were potential Class members, and all persons and entities that so opted in are actual Class members.

G.  "Class Counsel" shall mean Lead Counsel and Co-Counsel, collectively.

H.  "Co-Counsel" shall mean Schubert Jonckheer & Kolbe LLP.

I.  "Complaint" shall mean Plaintiffs' class-action complaint in this action, filed on August 26, 2015.

J.      "Court" shall mean the United States Court of Federal Claims.

K.      "Crop Years" shall mean the 2002–2003, 2003–2004, 2005–2006, 2006–2007, 2007–2008, 2008–2009, and 2009–2010 crop years, collectively.  (As explained below, in each of the Crop Years, a percentage of the raisins delivered to handlers were ordered to be set aside in "reserve pools," pursuant to the California Raisin Handling Order.  Unlike the Crop Years, the 2004–2005 crop year had no reserve pool and has never been the subject of any claim in this litigation.)

L.      "Deemed Settlement Class Members" shall mean any and all individuals and entities that (a) satisfy the criterion set forth in Subparagraph F(a) of this paragraph; (b) do <u>not</u> satisfy any criterion set forth in Subparagraphs W(b)(i), W(b)(ii), and W(b)(iii) of this paragraph; (c) are <u>not</u> parties in *Lion Farms*; and (d) for consideration, including (without limitation) the consideration described in Paragraphs 1.YY, 24, 37–38, 40, 55, and 61 of this Settlement Agreement, timely agree to be bound to this Settlement Agreement, including (without limitation) the provision in Paragraph 26 releasing, waiving, abandoning, and forever discharging the United States from all Released Claims.

M.      "Deemed Settlement Notice" shall mean the written notice provided in this Settlement Agreement's <u>Exhibit E</u> or any written notice, substantively identical to that exhibit, sent to any potential Deemed Settlement Class Member.

N.      "Defendant" and "United States" shall each mean the Government of the United States of America.

O.      "Fairness Hearing" shall mean the hearing at which this Settlement Agreement is presented to the Court for final approval.

P.      "Fee and Expense Award" shall mean that part of the Settlement Amount and Supplemental Settlement Amount that shall be used to pay, in accordance with the terms of this Settlement Agreement and subject to the Court's approval, Plaintiffs' reasonable attorneys' fees and reimbursable actual costs and expenses, including (without limitation) fees and expenses paid to experts and consultants, incurred in connection with prosecuting and settling this action.

Q.      "*Hickman*."  This term is defined in Subparagraph D of this paragraph.

R.      "Lead Counsel" shall mean McDermott Will & Emery, LLP.

S.      "*Lion Farms*" shall mean the litigation, *Lion Farms, LLC v. United States*, No. 15-915C (Fed. Cl.), which is related to this action.

T.  "Notice and Administration Costs" shall mean all reasonable and necessary fees and expenses approved by the Court for payment to the Settlement Administrator from the Settlement Amount and Supplemental Settlement Amount, as provided for in this Settlement Agreement, including without limitation (a) all such fees actually charged and expenses actually incurred by the Settlement Administrator (1) in disseminating opt-in notices to potential Class members and processing responses thereto, including tabulating and reconciling reserve tonnage reflected by such responses, (2) in disseminating the Settlement Notice (<u>Exhibit C</u>) and Affiliate Settlement Notice (<u>Exhibit D</u>) to Opt-In Class Members, and processing responses thereto, including objections by Opt-In Class Members and withdrawals by Affiliate Class Members, (3) in establishing and maintaining the Settlement Website, (4) in disseminating the Deemed Settlement Notice (<u>Exhibit E</u>) to potential Deemed Settlement Class Members and processing responses thereto; (b) a reasonable negotiated flat fee, consistent with the foregoing fees and expenses, to cover costs and expenses expected to be incurred by the Settlement Administrator in furtherance of this Settlement Agreement following entry of judgment finally approving this Settlement Agreement, including making payments to Settlement Class Members and processing any refunds that Defendants are entitled to pursuant to this Settlement Agreement; and (c) all other such fees and expenses for activities reasonably necessary for the effective notice and administration of this Settlement Agreement pursuant to the Court's Preliminary Approval Order, as defined in Subparagraph Z of this paragraph.

U.  "Notice Date" shall mean the date 14 calendar days after the entry of the Preliminary Approval Order.

V.  "Notice Packet" shall mean a packet of documents, to be sent to each Opt-In Class Member who is not an Affiliate Class Member, including the Settlement Notice.

W.  "Opt-In Class Members" shall mean all persons and entities, regardless of business form, that (a) satisfy the criterion set forth in Subparagraph F(a) of this paragraph; and that (b)(i) are Plaintiffs; or (ii) previously submitted opt-in forms according to the Settlement Administrator's declaration described in Paragraph 21 of this Settlement Agreement, whether such opt-in forms were timely submitted or otherwise; or (iii) are Affiliate Class Members (as defined in Subparagraph A of this paragraph). For purposes of clarity, "Opt-In Class Members" shall not include any Deemed Settlement Class Members, as defined in Subparagraph L of this paragraph.

X.  "Parties" shall mean Plaintiffs and Defendant, collectively.

Y.  "Plaintiffs" shall mean the following named plaintiffs and Class representatives in this action:  Bruce Ciapessoni, Elisa Ciapessoni, Bob F.

Hansen, Hansen Enterprises, R&H Agri-Enterprises, Eldora Rossi, Rossi & Ciapessoni Farms, and Rossi & Rossi.

Z.    "Preliminary Approval Order" shall mean the Court's order, if entered, granting the Parties' motion for preliminary approval of this Settlement Agreement.

AA.    "Qualified Bank" shall mean a U.S. commercial bank that:  (a) is an insured depository institution within the meaning of 12 U.S.C. § 1813(c)(2); (b) has assets in excess of $10 billion; (c) is a national member bank, a state member bank, or a state nonmember bank within the meaning of 12 U.S.C. § 1813(d)-(e); and (d) meets the capital and leverage ratio requirements for a "well capitalized" institution as set forth in the regulations of the Board of Governors of the Federal Reserve System, 12 C.F.R. § 208.43(b), the Office of the Comptroller of the Currency, 12 C.F.R. § 6.4(c), or the Federal Deposit Insurance Corporation, 12 C.F.R. § 324.403(b), as applicable.

BB.    "RAC" shall mean the Raisin Administrative Committee.

CC.    "Raisin Takings Claims" shall mean all claims asserted by, arising under, or otherwise relating to the Complaint and/or any amended version of the Complaint.

DD.    "RBA" shall mean the Raisin Bargaining Association cooperative.

EE.    "Released Claims" shall mean any and all rights, claims, actions, causes of action, suits, obligations, losses, liabilities, and demands of whatever character, whether known or unknown, whether arising in law or in equity, whether existing jointly or severally, which any of the Settlement Class Members, or any of their heirs, executors, administrators, or assignees, might have or might ever acquire against the United States, its political subdivisions, and/or any of its agencies, departments, officers, agents, and/or employees, arising out of, related to, and/or included in the Raisin Takings Claims, regardless of whether they were addressed in the Complaint, including but not limited to all rights and claims for costs, expenses, attorneys' fees, interest, and/or damages of any sort.

FF.    "Secretary" shall mean the Secretary of Agriculture.

GG.    "Settlement Administrator" shall mean KCC Class Action Services, LLC, which disseminated opt-in notices to potential Class members and processed responses thereto, and which shall perform all duties of the Settlement Administrator under this Settlement Agreement.

HH.    "Settlement Agreement" shall mean this agreement with all the Exhibits thereto (*i.e.*, Exhibit A, Exhibit B, Exhibit C, Exhibit D, and Exhibit E), all of which are incorporated into and part of this agreement.

II.  "Settlement Amount" shall mean the sum of $85,000,000.00.

JJ.  "Settlement Amount Share" shall mean the portion of the Settlement Amount that, pursuant to this Settlement Agreement including (without limitation) its <u>Exhibit A</u>, is due to be paid to a given Opt-In Class Member.

KK.  "Settlement Check" shall mean the check, sent to the Settlement Class Member identified on the check as the check's payee, that is executed and sent to the payee for the purpose of transferring to the payee his/her/its Settlement Amount Share (in the case of Opt-In Class Members) or Supplemental Settlement Amount Share (in the case of Deemed Settlement Class Members)—with each such check being executed as non-transferrable and as void unless cashed or deposited within 365 calendar days from the check's execution date.

LL.  "Settlement Class" shall mean the set of all Settlement Class Members.

MM. "Settlement Class Account" shall mean a trust account, in a Qualified Bank, established for the purpose of effectuating this Settlement Agreement and into which the Settlement Amount and/or the Supplemental Settlement Amount shall be deposited and from which distributions to Settlement Class Members and other payments, as provided for in this Settlement Agreement, shall be paid.

NN.  "Settlement Class Members" shall mean all Opt-In Class Members (as defined Subparagraph W of this paragraph) and all Deemed Settlement Class Members (as defined in Subparagraph L of this paragraph).

OO.  "Settlement Comment" shall mean a written statement provided by any Opt-In Class Member in support of, or in opposition to, the fairness, reasonableness, or adequacy of this Settlement Agreement, including (without limitation) the noticed maximum that Plaintiffs will seek for the Fee and Expense Award.

PP.  "Settlement Response Deadline" shall mean the date 30 calendar days after the Notice Date.

QQ.  "Settlement Confirmation Notice" shall mean the written notice, to accompany each check sent to a Settlement Class Member, described in Paragraph 55 of this Settlement Agreement.  The Settlement Confirmation Notice shall incorporate by reference this Settlement Agreement.

RR.  "Settlement Execution Date" shall mean the earliest date as of which this Settlement Agreement has been fully executed by all the Parties.

SS.  "Settlement Finalization Date" shall mean the date when the Court's order approving this Settlement Agreement first becomes final and no longer subject to any appeal at any level.

TT. "Settlement Notice" shall mean the written notice provided in this Settlement Agreement's <u>Exhibit C</u> or any written notice, substantively identical to that exhibit, sent to any Opt-In Class Member who is not also an Affiliate Class Member.

UU. "Settlement Website" shall mean an informational and interactive website specific to this case that provides access to copies of the Settlement Notice, the Affiliate Settlement Notice, the Deemed Settlement Notice, this Settlement Agreement, a withdrawal form for Affiliate Class Members, and other related Court and settlement documents.

VV. "Sun-Maid" shall mean the Sun-Maid Growers of California cooperative.

WW. "Supplemental Notice Packet" shall mean a packet of documents, to be sent to each potential Deemed Settlement Class Member, including a Deemed Settlement Notice and a form for the potential Deemed Settlement Class Member to use to indicate his/her/its agreement to be bound by the terms of this Settlement Agreement.

XX. "Supplemental Settlement Amount" shall mean the amount, distinct from the Settlement Amount, of between $0.00 and $3,000,000.00, to be calculated as described in Paragraph 51 of this Settlement Agreement and in this Settlement Agreement's <u>Exhibit B</u>, Paragraph 1.

YY. "Supplemental Settlement Amount Share" shall mean the portion of the Supplemental Settlement Amount that, pursuant to this Settlement Agreement including (without limitation) its <u>Exhibit B</u>, is due to be paid to a given Deemed Settlement Class Member.

ZZ. "Time-and-Effort Amount" shall mean the total sum of $87,500.00, to be paid to Plaintiffs as described in this Settlement Agreement's Paragraph 40 and <u>Exhibit A</u> at Paragraph 1(c), as compensation for their time and effort in this litigation.

AAA. "USDA" shall mean Defendant as acting through the United States Department of Agriculture.

## BACKGROUND

### I. The California Raisin Handling Order

2. The Agricultural Marketing Agreement Act of 1937 authorizes the Secretary of Agriculture to promulgate "marketing orders" with the intent of helping to maintain orderly markets for particular agricultural products. The California Raisin Handling Order is a marketing order relevant to this matter. Pursuant to the California Raisin Handling Order, for

each raisin crop year, the RAC, composed largely of producers and handlers nominated by the raisin industry and approved by the Secretary, would compute and announce any preliminary and final percentages of the raisins that raisin "producers" delivered to "handlers" in that crop year (1) that the producers were free to sell ("free tonnage") and (2) that the producers were not free to sell because handlers were required to set them aside, or to "reserve" them, in a "reserve pool" for disposition by the RAC.  With the Secretary's approval, the final percentages were published in the Federal Register.  The California Raisin Handling Order defines "crop year" as the 12-month period beginning on August 1 and continuing through July 31 of the following calendar year.  *See* 7 C.F.R. § 989.21.

3.      Raisins are counted as belonging to the crop year in which they are first delivered to a handler.  Thus, to illustrate, the last day on which a raisin delivery could count as delivering raisins for the 2009–2010 Crop Year is July 31, 2010.  The 2009–2010 Crop Year was the last crop year that had a raisin reserve.

## II.   **Prior Proceedings**

### A.   **Initial Proceedings**

4.      On August 26, 2015, Plaintiffs initiated this action by filing in the Court the Complaint, which alleges rights to just compensation under the Fifth Amendment's Takings Clause for reserve-tonnage raisins allegedly taken from raisin growers by USDA pursuant to the California Raisin Handling Order.  Plaintiffs' Complaint asserts just-compensation claims for crop years in which a raisin reserve pool was established—including but not limited to the Crop Years, *i.e.*, the 2002–2003, 2003–2004, 2005–2006, 2006–2007, 2007–2008, 2008–2009, and 2009–2010 crop years.  (The 2004–2005 crop year had no reserve pool and has never been the subject of any claim in this litigation.)  Plaintiffs' initiation of this action followed the filing by Lion Farms, LLC, on August 21, 2015, of the complaint initiating the related *Lion Farms*

litigation—a complaint amended on August 26, 2015. The *Lion Farms* complaint and amended complaint asserted allegations and claims against Defendant substantially similar to those asserted in the Complaint in this action, but only as to some of the Crop Years.

5.    On September 28, 2015, Plaintiffs filed a motion for class certification. By Court order, responsive briefing on Plaintiffs' motion was deferred pending resolution of Defendant's anticipated motion to dismiss.

6.    On December 16, 2015, Defendant answered the Complaint and the *Lion Farms* amended complaint and also moved, on statute-of-limitations grounds, to dismiss or, in the alternative, for summary judgment on the claims in the Complaint, and in the *Lion Farms* amended complaint, concerning all crop years other than the 2009–2010 Crop Year. In support of these motions, Defendant argued that all those claims, other than about the 2009–2010 Crop Year, were barred by the statute of limitations, because they accrued more than six years before the Complaint, and the *Lion Farms* amended complaint, were filed. Defendant did not move to dismiss the 2009–2010 Crop-Year claims, as barred by the six-year statute of limitations. The 2009–2010 Crop-Year claims were asserted in the Complaint and in the *Lion Farms* amended complaint, both of which were filed in August 2015.

7.    On December 28, 2015, plaintiff Earl O. Boyajian filed the complaint initiating the *Boyajian* litigation. This complaint alleged facts and claims against Defendant substantially similar to those alleged in the Complaint.

8.    On February 26, 2016, Defendant moved, on statute-of-limitations grounds, to dismiss or, in the alternative, for summary judgment on all claims asserted in *Boyajian*.

9.    On November 29, 2016, after full briefing but without the requested oral argument, the Court denied in part Defendant's partial motion to dismiss this action or, in the

alternative, for summary judgment, asserting that an accrual-suspension rule applied in determining the timeliness of Plaintiffs' claims. The Court granted Defendant's motion to dismiss as to crop years other than those specifically named in the Complaint—*i.e.*, as to all crop years other than the Crop Years. The Court also denied all of Plaintiffs' arguments for the timeliness of their claims other than the accrual-suspension argument. The Court relied on its accrual-suspension ruling for its decision not to dismiss the claims concerning the Crop Years—other than the claim concerning the 2009–2010 Crop Year, which Defendant had not moved to dismiss. Plaintiffs acknowledge that Defendant respectfully disagrees with the Court's statute-of-limitations ruling, as to the claims concerning Crop Years other than the 2009–2010 Crop Year, and that Defendant expressly reserves the right to appeal that ruling, if this case is not resolved by settlement, and the right to contest the ruling and the timeliness of any claim in any other case.

10.     Also on November 29, 2016, the Court similarly granted in part, and denied in part, Defendant's motion to dismiss or, in the alternative, for summary judgment in *Boyajian* and denied Defendant's motion to dismiss or, in the alternative, for summary judgment in *Lion Farms*, which asserted only claims about a subset of the Crop Years. In *Boyajian*, the Court also granted the plaintiff's motion to substitute Ray Hickman as the named plaintiff and the proposed class representative on December 2, 2016, and thereafter stayed *Boyajian* (re-captioned as *Hickman*) on December 15, 2016. (As noted below, Ray Hickman subsequently opted-in to the Class in this action.)

### B.     Other Matters Related To Statute-Of-Limitations Arguments

11.     The RAC announced its determination of whether and when a percentage of a crop year's raisins must be set aside in a reserve pool pursuant to regulation, *i.e.*, 7 C.F.R. § 989.54(b). For each of the Crop Years (which are the only crop years still at issue in this

action and encompass all the crop years at issue in *Lion Farms*), this RAC announcement occurred by no later than October 9 of the Crop Year in question. For the last of these Crop Years, *i.e.*, the 2009–2010 Crop Year, this RAC announcement occurred on October 6, 2009. For every earlier Crop Year, this RAC announcement occurred before 2009. By regulation, for any crop year, handlers have three business days after any such announcement, or after acquiring any raisins subject to the announcement (if later), to set aside in the reserve pool the announced percentage of the crop year's raisins. *See* 7 C.F.R. § 989.166(b)(1).

12.     The RAC also recommended to the Secretary any final reserve percentage, for a crop year's raisins, by February 15 of the crop year in question, as required by regulation, *i.e.*, 7 C.F.R. § 989.54(d). For each of the Crop Years, this final RAC recommendation occurred by February 15 of the Crop Year in question. For the 2009–2010 Crop Year, this final RAC recommendation occurred on October 6, 2009. For every earlier Crop Year, this final RAC recommendation occurred before 2009.

13.     The Secretary designated any final reserve percentage for a crop year's raisins based on the RAC's recommendation. The Secretary's designated final percentage, if any, was published in the Federal Register. For the 2009–2010 Crop Year, the Federal Register dated April 22, 2010, published the Secretary's designated final reserve percentage. By regulation, handlers had three business days after that publication, or after acquiring any raisins subject to the publication (if later), to set aside in the reserve pool that final reserve percentage of that Crop Year's raisins. *See* 7 C.F.R. § 989.166(b)(1). For the 2009–2010 Crop Year, the Secretary's designated final reserve percentage went into effect on June 25, 2010. For every earlier Crop Year, the Secretary's designated final reserve percentages went into effect before 2010.

14.     The governing six-year statute-of-limitations period, set by 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon in filed within six years after such claim first accrues."), has already expired for all claims concerning all the crop years ever at issue in this action—and, for the last of these crop years, *i.e.*, the 2009–2010 Crop Year, it expired on or before August 7, 2018— assuming the following:  (1) that each such claim accrued no later than the effective date of the Secretary's designated final reserve percentage for the crop year at issue in the claim, or else accrued earlier (such as when the Federal Register published that percentage or when the RAC first announced its preliminary reserve percentage or recommended to the Secretary a final reserve percentage for the crop year); and (2) that the limitations period for any such claim was tolled for no greater period than from the date when this action first commenced, *i.e.*, on August 26, 2015, until the deadline, for opting into the Class, of October 6, 2017.

**C.     Further Proceedings And Negotiations**

15.     On March 24, 2017, Plaintiffs in this action filed a revised and unopposed class-certification motion.  Defendant preserved for appellate review all objections to the Class, including (without limitation) all objections on statute-of-limitations grounds.

16.     On May 11, 2017, the Court granted Plaintiffs' class-certification motion and certified the action as a class action under RCFC 23(b)(2) and 23(b)(3).  Pursuant to RCFC 23(c)(1)(B), the Court certified for this litigation a litigation class, defined as follows:

> All producers as defined in 7 C.F.R. § 989.11 and other persons as defined in 7 C.F.R. § 989.3 (collectively, "Producers") whose Natural Seedless raisins were acquired by handlers pursuant to 7 C.F.R. § 989.17 and set aside for the account of the Raisin Administrative Committee pursuant to 7 C.F.R. § 989.66(a) in the 2002–2003, 2003–2004, 2005–2006, 2006–2007, 2007–2008, 2008–2009, and 2009–2010 crop years; however, notwithstanding anything in this order to the contrary, this class shall exclude all Producers named as plaintiffs in *Evans v. United States*, No. 06-

439 (Fed. Cl.), from any claim concerning a crop year prior to the 2007–2008 crop year.  For clarity: any [c]lass claim(s) shall not concern a crop year other than the 2002–2003, 2003–2004, 2005–2006, 2006–2007, 2007–2008, 2008–2009, and 2009–2010 crop years.

17.    The Court also certified a litigation subclass, defined as follows:

All Producers whose Natural Seedless raisins were acquired by handlers pursuant to 7 C.F.R. § 989.17 and set aside for the account of the Raisin Administrative Committee pursuant to 7 C.F.R. § 989.66(a) in the 2009–2010 crop year.  For clarity:  any [s]ubclass claim(s) shall not concern a crop year other than the 2009–2010 crop year.

This definition of the certified litigation subclass is wholly encompassed by the Court's definition, stated above, of the certified litigation class.

18.    The Court's May 11, 2017 Order designated plaintiffs Bruce Ciapessoni, Elisa Ciapessoni, Bob F. Hansen, Hansen Enterprises, R&H Agri-Enterprises, Eldora Rossi, Rossi & Ciapessoni Farms, and Rossi & Rossi as the representatives of each of the certified Class and its certified Subclass.  The Order also appointed McDermott Will & Emery as Lead Counsel and Schubert Jonckheer & Kolbe LLP as Co-Counsel.

19.    On June 19, 2017, Plaintiffs submitted a consent motion to the Court for approval of a proposed plan of notice to potential members of the Class to advise them of this action, their right to join the Class by opting in, relevant deadlines, and how to obtain more information. Plaintiffs' notice plan provided for mailing a Class-notice packet by first-class U.S. mail to each potential Class member (with a self-addressed, stamped return envelope).  To join the Class, potential Class members could submit opt-in forms electronically at the case-designated website (www.reserveraisinsclassaction.com), by facsimile, by first-class mail, or by pre-paid delivery service.  The Court granted Plaintiffs' motion on June 29, 2017.  Plaintiffs' July 24, 2017 unopposed motion to amend this order was granted on July 31, 2017, by an order approving an

amended form of the Class notice, establishing a revised schedule for notice dissemination to potential Class members, and setting October 6, 2017, as the deadline to return opt-in forms (*i.e.*, sixty days from the August 7, 2017 deadline to commence notice) with an additional period, immediately thereafter, until November 6, 2017 for late opt-ins to be allowed upon a showing of good cause.  On August 4, 2017, the notice packet was sent by first-class U.S. mail to 6,397 potential Class members identified by the Parties.  Plaintiffs also notified potential Class members of this litigation through radio and newspaper advertisement campaigns.

        20.     Ray Hickman, the plaintiff in the stayed *Hickman* (formerly, *Boyajian*) litigation, opted into the certified Class in this action on August 15, 2017, and voluntarily dismissed the *Hickman* action without prejudice on October 23, 2017.

        21.     On December 6, 2017, the Settlement Administrator filed with the Court a declaration stating that it had received 4,045 opt-in forms by the October 6, 2017 deadline.  The declaration further stated that good cause was shown for another 99 opt-in forms that it had received late, but within the October 6, 2017 to November 6, 2017 "good cause" late opt-in period, while good cause was not shown for a further 27 opt-in forms that it had received during that "good cause" late opt-in period.  Additionally, the declaration stated that the Settlement Administrator had received 11 additional opt-in forms after November 6, 2017.

        22.     The Parties entered into negotiations designed to amicably resolve this action's Raisin Takings Claims and all other related claims of Opt-In Class Members.  On May 3, 2018, following a telephonic status conference on that date, the Court stayed the case to facilitate the Parties' ongoing settlement efforts.  The Parties engaged in an extensive review of information and arm's-length negotiations.

23.     Class Counsel represent that they have conducted appropriate investigations and have analyzed and evaluated the merits of the claims made against Defendant in this litigation, the findings, conclusions and holdings of the Court in this litigation, and the impact of this Settlement Agreement on the Settlement Class Members as well as the impact of no settlement, and based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation—including the possibility that this litigation, if not settled now, might not result in any recovery, or might result in a recovery that is less favorable than that provided for in this Settlement Agreement, and that otherwise a fair judgment would not occur for several years—Class Counsel are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable and adequate and that this Settlement Agreement is in the best interests of all Settlement Class Members.

## TERMS OF THE SETTLEMENT AGREEMENT

NOW, THEREFORE, relying on the definitions stated in the Definitions section above and in consideration of the Background section above, the mutual covenants and promises set forth in this Settlement Agreement, and the good and valuable consideration provided for in this Settlement Agreement, the Parties agree as follows.

24.     Plaintiffs have offered, on behalf of all Opt-In Class Members, to settle this action in exchange for Defendant's payment of the Settlement Amount plus the Supplemental Settlement Amount.  The maximum amount that Defendant may be responsible to pay under this Settlement Agreement shall not exceed the sum of the Settlement Amount plus the Supplemental Settlement Amount.  Notwithstanding any other provision of this Settlement Agreement to the contrary, in any and all events, Defendant shall have no obligation to make any payment pursuant to this Settlement Agreement unless the Settlement Finalization Date occurs and, if it

occurs, shall be obligated to pay only the Settlement Amount plus the Supplemental Settlement Amount. If the Settlement Finalization Date occurs, Defendant's counsel will request that the payment of the Settlement Amount plus the Supplemental Settlement Amount be made by Defendant within 30 calendar days after the Settlement Finalization Date. For clarity: The prior sentence's reference to "30 calendar days" refers only to a requested timing for the payment and does not set forth any requirement under this Settlement Agreement that Defendant must pay the Settlement Amount plus the Supplemental Settlement Amount within a 30-calendar-day time period—*provided*, however, that the United States agrees that it will pay the Settlement Amount plus the Supplemental Settlement Amount within a reasonable time.

25.     Plaintiffs' offer, on behalf of all Opt-In Class Members, has been accepted on behalf of the Attorney General.

26.     On the Settlement Execution Date, and without any further action or condition, each of the Plaintiffs and each of the other Settlement Class Members jointly and severally releases, waives, abandons, and permanently discharges the United States from all the Released Claims. For purposes of clarification, if this Settlement Agreement becomes null and void pursuant to Paragraph 53 of this Settlement Agreement, then the releases, waivers, abandonments, and discharges set forth in this paragraph shall also become null and void.

27.     This Settlement Agreement is in no way related to or concerned with income or other taxes for which the Settlement Class or any of the Settlement Class Members is now liable or may become liable in the future as a result of this Settlement Agreement.

28.

    A. Each Plaintiff warrants and represents that, as of the date of the Plaintiffs' execution of this Settlement Agreement: (1) the Plaintiff is not aware of any other action, proceeding, or suit (except for *Lion Farms*, defined in Paragraph 1.S of this Settlement Agreement) asserting, arising out of, or related to this

case or any cause of action ever pleaded in this case, that is pending or being prepared to be commenced or filed in or submitted to any court, administrative agency, or legislative body; and (2) the Plaintiff has made no assignment or transfer of any of the Released Claims.

B. Should any Plaintiff violate any warranty or representation in Subparagraph A of this paragraph as of date of their execution of this agreement (as to clauses (1) and (2) of that subparagraph) or thereafter (as to clause (2) of that subparagraph), then such Plaintiff shall promptly pay to the United States (1) the total amount paid by the United States that, pursuant to this Settlement Agreement, is otherwise allocable to such Plaintiff, including (without limitation) the Plaintiff's Settlement Amount Share and the Time-and-Effort Amount, and (2) interest on that total amount, calculated using the rates provided in 41 U.S.C. § 7109 and computed from the date on which the United States completes its payment of the Settlement Amount into the Settlement Class Account.

C. If any Plaintiff violates any warranty or representation required by Subparagraph A of this paragraph, Defendant may request as to such Plaintiff, up until the time that the Plaintiff cashes or deposits the Plaintiff's Settlement Check, that the Settlement Administrator cancel that check and refund the check's amount directly to Defendant, net of any fees charged by the Qualified Bank for the cancellation of such check, in which case the Settlement Administrator shall do so; *provided*, however, that the Plaintiff shall remain responsible for all amounts, not thus refunded, that are required to be refunded to Defendant by Subparagraph B of this paragraph.

D. Each Settlement Class Member who is not a Plaintiff, as a condition of cashing or depositing the member's Settlement Check, shall warrant and represent:  (1) that the member is not and will not be a party to any other action, proceeding, or suit—in any court, administrative agency, or legislative body—arising out of or related to, or asserting any cause of action arising out of or related to, this case or any cause of action ever pleaded in this case; (2) that the member has not authorized, approved, or given assent, and will not authorize, approve, or give assent, to any such other action, proceeding, or suit, in any part on the member's behalf, that is pending or being prepared to be commenced or filed in or submitted to any court, administrative agency, or legislative body; and (3) that the member has not made and will not make any assignment or transfer of any of the Released Claims.  (Solely for purposes of clarity, nothing in the warranty and representation described in clause (3) of the preceding sentence concerns any assignment or transfer of any raisins or any proceeds from any raisin sales.)  Should any such Settlement Class Member violate, or fail to satisfy, this condition for cashing or depositing the Settlement Check, the entire amount paid by the United States that, pursuant to this Settlement Agreement, is otherwise allocable pursuant to this Settlement Agreement to that Settlement Class Member shall be refunded to the United States promptly together with interest thereon calculated using the

rates provided in 41 U.S.C. § 7109, computed from the date on which the United States completes its payment of the Settlement Amount and the Supplemental Settlement Amount into the Settlement Class Account.

E.  If Defendant or Class Counsel informs the Settlement Administrator that any Settlement Class Member other than a Plaintiff cannot satisfy the conditions for cashing or depositing the member's Settlement Check as stated in Subparagraph D of this paragraph, and if that check has not already been cashed or deposited, then the Settlement Administrator shall cancel that check and shall refund that Settlement Class Member's Settlement Amount Share (if an Opt-In Class Member) or Supplemental Settlement Amount Share (if a Deemed Settlement Class Member) directly to Defendant, net of any fees charged by the Qualified Bank for the cancellation of the check.  A Settlement Class Member described in the first sentence of this subparagraph, whose Settlement Check is cancelled as provided for in this subparagraph shall not be liable to Defendant for any interest on the member's Settlement Amount Share or the amount of any fees charged by the Qualified Bank for the cancellation of the check.  Any Settlement Class Member, described in the first sentence of this subparagraph, whose Settlement Check has been cashed or deposited but who owes any amount to Defendant pursuant to Subparagraph D of this paragraph, shall be responsible for that amount being paid promptly to Defendant.

29.    This Settlement Agreement is for the purpose of settling this case and claims that could have been asserted in this case, and for no other purpose.  Accordingly, this Settlement Agreement shall not bind the Parties, nor shall it be cited or otherwise referred to, in any proceedings, whether judicial or administrative in nature, in which the Parties or counsel for the Parties have or may acquire an interest, except as is necessary to effectuate the terms of this Settlement Agreement.

30.    Lead Counsel represents that it has been and is authorized to enter into this Settlement Agreement on behalf of all Plaintiffs and, subject to Court approval of this Settlement Agreement, on behalf of all other Settlement Class Members.

31.    This Settlement Agreement is the result of compromise and settlement.  This Settlement Agreement shall not be construed as or as implying any admission, by or on behalf of Defendant, regarding any legal or factual matter—including (without limitation) any legal or

factual matter related to any allegation or claim asserted, or relief requested, in the Complaint or in any other filing with the Court in this action or related to any liability for just compensation, interest, attorneys' fees, other litigation expenses, or any other kind of legal or equitable relief—except as expressly stated in this Settlement Agreement.  This Settlement Agreement shall also not be construed as or as implying any admission by Plaintiffs regarding any legal or factual matter—including (without limitation) any legal or factual matter relating to any allegation or claim asserted, or relief requested, in the Complaint or in any other filing with the Court in this action—except as expressly stated in this Settlement Agreement.  Notwithstanding any other provision of this Settlement Agreement to the contrary, Defendant does not waive for any subsequent proceeding any defense, including (without limitation) any defense based on any statute of limitations, laches, estoppel, issue preclusion, claim preclusion, or *res judicata*.

32.     Plaintiffs and Defendant agree to join in seeking Court approval of this Settlement Agreement.

33.     The Settlement Administrator's responsibilities shall include (without limitation) performing the following tasks, as provided for in this Settlement Agreement:

(a) Providing the notices of this Settlement Agreement to Opt-In Class Members and potential Deemed Settlement Class Members, as provided for in this Settlement Agreement and its Exhibit C, Exhibit D, and Exhibit E;

(b) Accepting and processing any objections to this Settlement Agreement by Opt-In Class Members;

(c) Accepting and processing any notices of withdrawal from the Settlement Class by Affiliate Class Members;

(d) Accepting and processing requests, by potential Deemed Settlement Class Members, to become Deemed Settlement Class Members;

(e) Paying Settlement Class Members their Settlement Amount Shares and Supplemental Settlement Amount Shares from the Settlement Amount and Supplemental Settlement Amount, as provided for in this Settlement Agreement and its Exhibit A and Exhibit B; and

     (f)  Providing the Parties a final accounting of all payments made from the Settlement Amount and Supplemental Settlement Amount.

34.     The following shall be paid from the Settlement Amount and Supplemental Settlement Amount, as provided for in this Settlement Agreement and its exhibits, in the order below:

     (a)  the Fee and Expense Award; and then

     (b)  the Notice and Administration Costs; and then

     (c)  the Time-and-Effort Amount for Plaintiffs; and then

     (d)  the Settlement Amount Shares and the Supplemental Settlement Amount Shares (as set forth in Paragraphs 51, and 55, and in Exhibit A and Exhibit B, of this Settlement Agreement, as subject to the other provisions of this Settlement Agreement).

35.     The Parties agree to cooperate reasonably, as to all aspects of this Settlement Agreement, to minimize the costs of the Settlement Administrator.  To the extent that invoices from the Settlement Administrator are required by the Court, Class Counsel shall be responsible for submitting those invoices to the Court.

36.     Defendant shall have no role in, and shall not be held responsible or liable in any way for, the Settlement Class Account, the holding or investment of the monies in the Qualified Bank that maintains the Settlement Class Account, the distribution of any funds from the Settlement Class Account, or any act or omission of the Settlement Administrator.

37.     Plaintiffs will file a motion with the Court, under the common fund doctrine, seeking to use a portion of the Settlement Amount and Supplemental Settlement Amount for the Fee and Expense Award and Notice and Administration Costs.  In their motion for preliminary approval of this Settlement Agreement and its supporting papers, Plaintiffs will state the maximum amount, out of the Settlement Amount and Supplemental Settlement Amount, that they will seek from the Court as constituting the Fee and Expense Award.  That maximum

amount, and its purpose, shall be stated in the Settlement Notice, the Affiliate Settlement Notice, and the Deemed Settlement Notice.

38.    The Parties have negotiated the Settlement Amount and Supplemental Settlement Amount to be inclusive of all amounts for payment of Plaintiffs' attorneys' fees and litigation expenses and Notice and Administration Costs.  The Court will determine any and all amounts to be awarded—as (a) attorney-fee compensation, which shall not exceed 25 percent of the sum of the Settlement Amount plus the Supplemental Settlement Amount, and (b) any other reasonable and allowable litigation expense or fee, including Notice and Administration Costs—and paid from the Settlement Amount and Supplemental Settlement Amount under the common fund doctrine, in which case the United States will not object to any such award.  For clarity: Defendant agrees not to object to attorney-fee compensation, paid from the Settlement Amount and Supplemental Settlement amount, of up to 25 percent of the sum of the Settlement Amount plus the Supplemental Settlement Amount, except to the extent previously disallowed by the Court.  Defendant further agrees not to object to Plaintiffs' petition for reimbursement of reasonable, documented, actual expenses in connection with Plaintiffs' litigation and settlement of this action (including any attendant appeals), as well as Notice and Administration Costs, to be paid out of the common fund created by payment of the Settlement Amount and Supplemental Settlement Amount.  For the avoidance of any doubt, notwithstanding any other provision of this Settlement Agreement to the contrary, Defendant's payment obligations under or relating to this Settlement Agreement shall not exceed the sum of the Settlement Amount plus the Supplemental Settlement Amount.

39.    Any third party that has paid fees, expenses, or costs that are included in the calculation of either the Court-approved Fee and Expense Award or the Court-approved Notice

and Administration Costs, including any third party that has reimbursed the Settlement

Administrator for Notice and Administration Costs, shall be entitled to reimbursement of such

funds from these approved amounts.  The Settlement Administrator shall reimburse every such

third party such funds as directed by Class Counsel.

     40.    The Time-and-Effort Amount shall be divided equally between the seven

Plaintiffs ($12,500.00 each), as also indicated by this Settlement Agreement's Exhibit A at

Paragraph 1(c), and shall be paid from the Settlement Amount and Supplemental Settlement

Amount as set forth in Exhibit A's Paragraph 2.  The Time-and-Effort Amount shall be in

addition to any other payment to which Plaintiffs are entitled pursuant to this Settlement

Agreement.

     41.    As soon as practicable after execution of this Settlement Agreement on behalf of

all the Parties, Plaintiffs shall file with the Court a consent motion seeking (1) entry of an order

preliminarily approving this Settlement Agreement and finding this Settlement Agreement to be

sufficiently fair, reasonable, and adequate to permit notice of the preliminarily-approved

Settlement Agreement to be disseminated to the Settlement Class Members; (2) the Court's

approval of Plaintiffs' selected Settlement Administrator, approval of the Parties' Settlement

Notice (Exhibit C), Affiliate Settlement Notice (Exhibit D), Deemed Settlement Notice (Exhibit

E); (3) a date set for a Fairness Hearing at which the Court will (a) consider any timely

Settlement Comments properly submitted by Opt-In Class Members and any timely and properly

submitted responses by the Parties to any such comments, (b) determine whether this Settlement

Agreement is fair, reasonable, and adequate and in the best interest of Settlement Class

Members, (c) determine whether this Settlement Agreement should be finally approved, and, if

so, (d) determine the amounts to be awarded for the Fee and Expense Award, the Notice and

Administration Costs, and the Time-and-Effort Amount; and (4) upon final approval of this

Settlement Agreement, entry of judgment (a) granting final approval of this Settlement

Agreement, (b) setting award amounts for the Fee and Expense Award, Notice and

Administration Costs, and the Time-and-Effort Amount, (c) dismissing this action with

prejudice, (d) incorporating by reference this Settlement Agreement, and (e) retaining

jurisdiction to enforce this Settlement Agreement.

       42.     The Settlement Notice shall briefly describe:  (a) the nature of the action; (b) the

claims, issues, and defenses raised in the litigation; (c) a summary of the terms of this Settlement

Agreement; (d) the rights of Opt-In Class Members to submit Settlement Comments and, in

them, to object to this Settlement Agreement (including, without limitation, as to the Fee and

Expense Award and the Notice and Administration Costs); (e) the rights of Affiliate Class

Members to withdraw from the Settlement Class; (f) the associated deadlines for objecting to this

Settlement Agreement and the date, time, and location of the Fairness Hearing; and (g) how to

obtain additional information about this Settlement Agreement.

       43.     The Affiliate Settlement Notice shall briefly describe:  (a) the nature of the action;

(b) the claims, issues, and defenses raised in the litigation; (c) a summary of the terms of this

Settlement Agreement; (d) the rights of Opt-In Class Members to submit Settlement Comments

and, in them, to object to this Settlement Agreement (including, without limitation, as to the Fee

and Expense Award and the Notice and Administration Costs); (e) the rights of Affiliate Class

Members to withdraw from the Settlement Class; (f) the associated deadlines for objecting to this

Settlement Agreement or withdrawing from the Settlement Class and the date, time, and location

of the Fairness Hearing; and (g) how to obtain additional information about this Settlement

Agreement.

44.      By no later than the Notice Date, the Settlement Administrator shall send by first-class U.S. mail: (1) the Notice Packet to all Opt-In Class Members, excluding Affiliate Class Members, and (2) the Affiliate Settlement Notice to all Affiliate Class Members. The Settlement Administrator shall also email the Notice Packet or Affiliate Notice Packet, as appropriate, to the current or last known email address of each Opt-In Class Member for whom any email address is known. The Settlement Administrator shall maintain the Settlement Website. The Settlement Administrator shall monitor and respond to inquiries from Settlement Class Members in a timely fashion and, as necessary, forward such inquiries to Class Counsel. The Settlement Administrator shall provide to Class Counsel and to Defendant's counsel, by no later than five (5) calendar days before the date of the Fairness Hearing, a declaration attesting to compliance with the notice requirements of this paragraph and Paragraph 50 of this Settlement Agreement.

45.      Opt-In Class Members may provide Settlement Comments to the Court. Any such Settlement Comment will be considered by the Court only if in writing and received by the Settlement Administrator no later than the Settlement Response Deadline. Within seven (7) calendar days after the Settlement Response Deadline, the Settlement Administrator shall file with the Court all timely-received Settlement Comments. Any objecting Settlement Comment shall describe each objection's basis, including (without limitation) by citing all the legal authorities and evidence on which the objection relies. Each Settlement Comment shall also state the name, address, and phone number of the Opt-In Class Member submitting it or on whose behalf it is submitted (and, if that member is represented by legal counsel, the name, address and phone number for such counsel). Any Settlement Comment shall also state whether the Opt-In Class Member submitting it intends to appear at the Fairness Hearing and whether he/she/it will be represented by legal counsel at the Fairness Hearing. Any Opt-In Class Member

that fails to indicate in the Settlement Comment his/her/its intention to appear, in person or

through an attorney, at the Fairness Hearing shall not be permitted to speak, or to have an

attorney speak on his/her/its behalf, at that hearing.  If any Opt-In Class Member submits a

Settlement Comment or appears at the Fairness Hearing in reliance on legal representation, the

Opt-In Class Member shall be solely responsible for attorneys' fees, costs, and expenses for that

legal representation.

   46. Any Affiliate Class Member may withdraw from the Settlement Class, provided

that the Affiliate Class Member's written notice of such withdrawal is provided to and received

by the Settlement Administrator by the Settlement Response Deadline.  The person or entity

submitting such notice of withdrawal shall be excluded from the Settlement Class, shall not be

bound by the releases, waivers, abandonments, and discharges in Paragraph 26 of this Settlement

Agreement, and shall no longer be an Affiliate Class Member or any Settlement Class Member,

immediately upon such timely receipt by the Settlement Administrator of the notice of

withdrawal and, as thus excluded, shall also be excluded from payment by the Settlement

Administrator of any part of the Settlement Amount; and the Settlement Amount Share that the

withdrawn person or entity would have received had he/she/it not withdrawn shall immediately

revert to being the property of Defendant, no Settlement Check shall be sent to that person or

entity, and that Settlement Amount Share shall be refunded to Defendant no later than the date

on which Settlement Checks are first disbursed.

   47. Any objection to this Settlement Agreement by an Opt-In Class Member that is

not submitted in a Settlement Comment that is timely received by the Settlement Administrator,

as provided for above, shall be deemed to be forever waived by that Opt-In Class Member, and

he/she/it shall forever be foreclosed from asserting the objection (by appeal or otherwise) to this

Settlement Agreement.  Any Affiliate Class Member that does not provide timely notice of

withdrawal from the Settlement Class, in the manner provided for above, shall be deemed to

have forever waived his/her/its right to withdraw from the Settlement Class.

48.     Any of the Parties may respond to any Settlement Comment by filing a response

with the Court within 14 calendar days after the Settlement Response Deadline.

49.     During the 30-day period after the Notice Date until and including the Settlement

Response Deadline, any person or entity that is a potential Deemed Settlement Class Member

may become a Deemed Settlement Class Member by agreeing in writing to be bound to all the

terms and conditions of this Settlement Agreement, including (without limitation) to the

provisions in Paragraph 26 releasing, waiving, abandoning, and permanently discharging the

United States from all Released Claims, provided that such written agreement must be received

by the Settlement Administrator on or before the Settlement Response Deadline date.  Any

potential Deemed Settlement Class Member that fails to agree in writing to the terms and

conditions of this Settlement Agreement may not become a Deemed Settlement Class Member,

and any potential Deemed Settlement Class Member that objects to any of the terms and

conditions of this Settlement Agreement shall be deemed as not agreeing in writing to the terms

and conditions of this Settlement Agreement.

50.     By no later than the Notice Date, the Settlement Administrator shall send the

Supplemental Notice Packet by first-class U.S. mail to each person or entity that is a potential

Deemed Settlement Class Member.  The Settlement Administrator shall also email the

Supplemental Notice Packet to the current or last known email address of each such potential

Deemed Settlement Class Member for whom an email address is known.  The Settlement

Administrator shall remain observant for any inquiries from such potential Deemed Settlement

Class Members and shall promptly respond to any such inquiries and, as necessary, shall promptly forward such inquiries to Class Counsel. The Settlement Administrator shall include a statement affirming its compliance with these provisions in its declaration, required by Paragraph 44 above, attesting to compliance with the notice requirements in this Settlement Agreement.

51.      Consistent with the definition provided in Paragraph 1.XX of this Settlement Agreement, the Supplemental Settlement Amount shall not exceed $3,000,000.00. The Supplemental Settlement Amount shall be calculated pursuant to Paragraph 1 of <u>Exhibit B</u> of this Settlement Agreement. The Fee and Expense Award, Notice and Administration Costs, and Time-and-Effort Amount shall be paid from the Settlement Amount and the Supplemental Settlement Amount (as calculated pursuant to Paragraph 1 of <u>Exhibit B</u> of this Settlement Agreement) in accordance with Paragraph 2 of <u>Exhibit A</u> of this Settlement Agreement.

52.      This Settlement Agreement's provisions for potential and actual Deemed Settlement Class Members are intended solely to resolve potential future claims from individuals and entities that are otherwise not part of the Settlement Class. Such provisions do not re-open the Class opt-in period for this action, and nothing in these provisions or in any other part of this Settlement Agreement constitutes any waiver, or any agreement to toll, any statute of limitations by Defendant.

53.      Notwithstanding anything in this Settlement Agreement to the contrary, this Settlement Agreement shall be entirely null and void after 21 calendar days of any of the following occurring: (a) the Court declining to enter the Preliminary Approval Order in materially the form agreed to by the Parties; (b) the Court declining final approval of this Settlement Agreement in materially the form agreed to by the Parties; (c) any appellate court, on appeal in this action, requiring disapproval, or a material modification, of this Settlement

Agreement; or (d) the Court declining to enter the judgment referenced in Paragraph 41;

*provided*, however, that the Settlement Agreement may in any event remain in effect, and not

nullified or made void, by the mutual written agreement of counsel for the Parties.

54.     Defendant shall deposit the Settlement Amount and Supplemental Settlement

Amount into the Settlement Class Account at a Qualified Bank.  Within five calendar days after

the Settlement Finalization Date, the Settlement Administrator or Lead Counsel shall provide to

Defendant's counsel information sufficient to allow that deposit.

55.     The Settlement Administrator shall pay each Opt-In Class Member his/her/its

Settlement Amount Share, and each Deemed Settlement Class Member his/her/its Supplemental

Settlement Amount Share, in accordance with the allocation plans set forth in this Settlement

Agreement's Exhibit A and Exhibit B.  All Settlement Checks for payment of those shares shall

be executed and sent within 30 calendar days after the date on which Defendant pays the

Settlement Amount plus the Supplemental Settlement Amount.  The Settlement Administrator or

its agent shall mail each Settlement Check, along with the Settlement Confirmation Notice, to the

last known address of the Settlement Class Member whose payment it is.  The Settlement

Confirmation Notice shall state that the Settlement Check is non-transferrable and void if not

cashed or deposited within 365 calendar days after its execution and shall also state as follows:

"This check is provided pursuant to the Settlement Agreement in *Ciapessoni et al. v. United

States*, No. 15-938C (U.S. Court of Federal Claims) (the *Ciapessoni* litigation).  Pursuant to the

Settlement Agreement, the check's payee and all the payee's affiliates, successors, and assigns

have already released any claim and have already waived any right to any and all other relief for

which the United States might ever be liable in relation to any raisins or claims at issue in the

*Ciapessoni* litigation.  By cashing or depositing this check, the check's payee acknowledges

having been bound to that Settlement Agreement, which is fully incorporated herein, and its release of claims and waiver of rights, and further warrants that the payee has not authorized and is not a party to any claim or lawsuit, other than the *Ciapessoni* litigation, asserting on payee's behalf any right to payment from the United States Government for any reserve raisins from the 2009–2010 Crop Year or any prior crop year, and has not assigned or transferred to any other person or entity any of the released claims or any of the waived rights referenced above.  The full terms and conditions of the Settlement Agreement may be found online at www.reserveraisinsclassaction.com."  The Settlement Administrator shall promptly make reasonable attempts to locate valid addresses for Settlement Class Members with undelivered Settlement Checks and to send payments as provided for in this Settlement Agreement to Settlement Class Members at their valid addresses.

56.    The Settlement Administrator shall pay all of the Fee and Expense Award and the Notice and Administration Costs no later than 30 calendar days after the date on which Defendant pays the Settlement Amount plus the Supplemental Settlement Amount.

57.    If any Settlement Check remains uncashed within 60 calendar days after its execution date, the Settlement Administrator shall make reasonable attempts promptly, and at least within 30 calendar days thereafter, to contact the check's payee and to remind the payee of the check's void date and that the check is non-transferrable.

58.    If any Settlement Check is not deposited or cashed by the 440th calendar day after the date on which Defendant pays the Settlement Amount plus the Supplemental Settlement Amount, that portion of the Settlement Amount and/or Supplemental Settlement Amount shall immediately revert, in its entirety, to being the property of the United States and shall be reimbursed to the United States by the Settlement Administrator within 14 calendar days

thereafter—*i.e.*, by the 454th calendar day after the date on which Defendant pays the Settlement Amount plus the Supplemental Settlement Amount. Any such reversion and any such reimbursement shall have no effect on, and shall in no way cancel, void, or nullify in any part, any release, waiver, or abandonment of, or permanent discharge of the United States from, the Released Claims, pursuant to this Settlement Agreement, or any legal effect of the dismissal with prejudice of this action.

59.     Within 465 days after the date on which Defendant pays the Settlement Amount plus the Supplemental Settlement Amount, the Settlement Administrator shall provide to counsel for Defendant and to Lead Counsel a full and final accounting of all activity pertaining to the Settlement Class Account, all payments made from the Settlement Amount and Supplemental Settlement Amount, and the amount of any portion of the Settlement Amount and Supplemental Settlement Amount reimbursed to the United States, as provided for above. Plaintiffs shall provide to counsel for Defendant a list of all Settlement Class Members, which list shall be subject to the amended stipulated protective order entered in this action on March 25, 2019 (ECF No. 79).

60.     All proceedings in this action, except proceedings addressing this Settlement Agreement or any potential or actual settlement of this action, shall remain stayed until resolution of all such settlement-related proceedings.

61.     The Parties expressly agree that Defendant's total payment obligation under or in any way relating to this Settlement Agreement shall in no event exceed the total of the Settlement Amount of $85,000,000.00 and the Supplemental Settlement Amount of up to $3,000,000.00, as calculated pursuant to this Settlement Agreement; that this total payment obligation is inclusive of all attorney's fees, expenses, and costs that might be awarded to the

Settlement Class Members in relation to the Complaint, any amended version of the Complaint, the Released Claims, and this settlement; and that, in exchange for (among other things) the full resolution of this action and the release, waiver, and abandonment of, and the permanent discharge of the United States from, the Released Claims, as set forth in Paragraph 26, the United States having as its maximum total payment obligation under this Settlement Agreement the sum of the Settlement Amount of $85,000,000.00 plus the Supplemental Settlement Amount of between $0.00 and $3,000,000.00 is a material term or condition of this Settlement Agreement, including (without limitation) for purposes of Paragraph 53 of this Settlement Agreement.

62.     Notwithstanding anything in this Settlement Agreement to the contrary, no dispute by or on behalf of any of the Settlement Class Members concerning the precise calculation or amount of the Supplemental Settlement Amount or of any Settlement Amount Share or Supplemental Settlement Amount Share shall negate, nullify, or void any release, waiver, or abandonment of any of the Released Claims; and no such dispute shall in any way affect or alter any final approval of this Settlement Agreement or this Settlement Agreement's resolution of this action or any dismissal with prejudice of this action, including (without limitation) any such dismissal based on the motion for entry of judgment referenced in Paragraph 41 of this Settlement Agreement.

63.     In no event shall Plaintiffs or Class Counsel or Defendant or its counsel have any liability to any of the Settlement Class Members for any claim of wrongful or negligent conduct on the part of the Settlement Administrator, the Qualified Bank, or any of their agents, employees, or contractors.

64.     This Settlement Agreement shall be binding on all the Parties, all their related and affiliated companies and persons, all their successors and assigns, and, with respect to the Plaintiffs and all other Settlement Class Members, all their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, and attorneys.

65.     This Settlement Agreement shall not be construed to create any right in, to grant any remedy to, or to delegate any duty, obligation, or undertaking established herein to, any third party as a beneficiary of this Settlement Agreement.

66.     Each of the Parties (each for him/her/itself as "the Party" referenced in this paragraph) represents, warrants, and agrees to the following:  (a) that the Party has received legal advice from his/her/its attorney(s) with respect to the advisability of making the settlement provided for herein and with respect to the advisability of executing this Settlement Agreement; (b) that the Party does not rely upon any statement, representation, or promise of any other Party (or any officer, agent, employee, representative, or attorney of any such other Party) in agreeing to the terms of, or in executing, this Settlement Agreement, except as expressly stated in this Settlement Agreement, and no Party (nor any officer, agent, employee, representative, or attorney of any Party) has made any statement, representation, or promise to any other Party regarding any fact relied on in entering into this Settlement Agreement; (c) that the Party has made such investigation of the facts pertaining to this settlement and this Settlement Agreement, and all matters pertaining thereto, as he/she/it deems necessary; and (d) that the Party has read this Settlement Agreement in its entirety and understands its contents.

67.     The Parties have negotiated all the terms and conditions of this Settlement Agreement at arm's length.  All the terms and conditions of this Settlement Agreement have been relied on by all the Parties in entering into this Settlement Agreement.  The terms and

conditions of this Settlement Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

68.     Any and all captions and headings of sections or paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Settlement Agreement.

69.     The Settlement Notice, Affiliate Settlement Notice, Deemed Settlement Notice, and Settlement Confirmation Notice are intended to provide a summary of the basic operation of this Settlement Agreement and the rights, and/or potential rights, under this Settlement Agreement of their respective recipients.  To the extent that such notices conflict with the terms of this Settlement Agreement, the terms of this Settlement Agreement shall control.

70.     This Settlement Agreement shall be interpreted in accordance with the laws of the United States without respect to the laws of any particular State.

71.     The Parties agree to cooperate in good faith with each other and with the Settlement Administrator to effectuate this Settlement Agreement and to resolve any matters that arise with respect to the effectuation and interpretation of this Settlement Agreement.

72.     The Parties shall cooperate in good faith with each other and shall use their best efforts to obtain the Court's approval of this Settlement Agreement and all its terms.

73.     For any and every document related to this Settlement Agreement that is filed with the Court in this action, service of a copy of the document on any Party shall be deemed complete when the document has been uploaded using, and automatically docketed by, the Court's ECF system.

74.     This Settlement Agreement may be amended or modified only by an agreement in writing signed by counsel for all the Parties and, following preliminary approval, only if the

proposed amendment or modification is approved by the Court.  Any such amendment or modification to this Settlement Agreement may be made without additional notice to the Settlement Class unless the Court requires otherwise.

75.     This Settlement Agreement sets forth the entire agreement of the Parties with respect to the subject matter hereof as to each and every Settlement Class Member.  This document constitutes a complete integration of the agreement between the Parties and supersedes any and all prior oral or written representations, understandings, or agreements among or between them with respect to its subject matter.

76.     The Parties agree that this Settlement Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one and the same instrument.  Facsimile signatures shall have the same effect as original signatures in binding the Parties.

In witness whereof, each of the Parties has reviewed and approved this Settlement Agreement and has caused this Settlement Agreement to be executed on his/her/its behalf by his/her/its duly authorized counsel of record or legal representative.

FOR THE PLAINTIFFS AND SETTLEMENT CLASS MEMBERS:

Agreed to:   _____     Dated: __July 15, 2019__
                        M. Miller Baker
                        McDermott Will & Emery LLP
                        The McDermott Building
                        500 N. Capitol Street, NW
                        Washington, DC 20001
                        Telephone: (202) 756-8233
                        Facsimile: (202) 591-2763
                        mbaker@mwe.com
                        Lead Counsel

Agreed to:                                              Dated: __7/12/19__

Noah M. Schubert
Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
nschubert@sjk.law
Co-Counsel

*Attorneys for the Plaintiffs and Settlement Class Members*


FOR DEFENDANT, THE UNITED STATES OF AMERICA:

Agreed to:        JOSEPH H. HUNT                        Dated: __7/12/2019__
                  Assistant Attorney General

                  ROBERT E. KIRSCHMAN, JR.
                  Director

                  L. MISHA PREHEIM
                  Assistant Director
                  Authorized Representative of the Attorney General


                  ISAAC B. ROSENBERG
                  Trial Attorney
                  U.S. Department of Justice
                  Civil Division
                  Commercial Litigation Branch
                  P.O. Box 480, Ben Franklin Station
                  Washington, DC 20044
                  Telephone: (202) 507-6058
                  Facsimile: (202) 307-0972
                  Isaac.B.Rosenberg@usdoj.gov

*Attorneys for Defendant, the United States of America*

## EXHIBIT LIST

| Exhibit | Description |
|---------|-------------|
| A | Calculation of Settlement Amount Shares of Opt-In Class Members |
| B | Calculation of Supplemental Settlement Amount Shares of Deemed Settlement Class Members |
| C | Settlement Notice |
| D | Affiliate Settlement Notice |
| E | Deemed Settlement Notice |

DM_US 160358131-1.097859.0011

Settlement Agreement
Page 37 of 37

## EXHIBIT A

This exhibit explains how the Settlement Administrator shall calculate Settlement Amount Shares of Opt-In Class Members under the Settlement Agreement.[1]

1.    **Deduction of the Fee and Expense Award, Notice and Administration Costs, and Plaintiffs' Time-and-Effort Amount from the Settlement Amount and Supplemental Settlement Amount.**  Before the Settlement Administrator calculates Settlement Amount Shares, the Settlement Administrator shall deduct the following amounts from the Settlement Amount and Supplemental Settlement Amount on a proportional basis, as set forth in Paragraph 2 below:

    **(a)** The Fee and Expense Award;

    **(b)** The Notice and Administration Costs;

    **(c)** Plaintiffs' Time-and-Effort Amount.  This amount, totaling $87,500.00, shall be disbursed to Plaintiffs for their time and effort in this litigation according to the following allocations:

        (i)    $12,500.00 to Bruce and Elisa Ciapessoni;

        (ii)    $12,500.00 to Bob F. Hansen;

        (iii)    $12,500.00 to Hansen Enterprises;

        (iv)    $12,500.00 to R&H Agri-Enterprises;

        (v)    $12,500.00 to Eldora Rossi;

        (vi)    $12,500.00 to Rossi & Ciapessoni Farms; and

        (vii)    $12,500.00 to Rossi & Rossi.

---

[1] All definitions of terms set forth in the Settlement Agreement, of which this Exhibit A is a part, shall apply to those same terms where used in this exhibit.  All references in this exhibit to raisins refer to Natural Seedless raisins.

These Time-and-Effort Amount payments shall be in addition to any and all Settlement Amount Shares for the Plaintiffs, as provided for in this exhibit's Paragraph 3, below.

**2.    Allocation of the Fee and Expense Award, Notice and Administration Costs, and Plaintiffs' Time-and-Effort Amount Between the Settlement Amount and the Supplemental Settlement Amount.**  The Settlement Administrator shall pay the Fee and Expense Award, the Notice and Administration Costs, and Plaintiffs' Time-and-Effort Amount (collectively, the "Fee-Cost-and-Effort Amount") from the Settlement Amount and the Supplemental Settlement Amount according to the calculations set forth in this paragraph's Subparagraphs (a) through (c).

**(a)** First, the Total Settlement Amount shall be determined. The Total Settlement Amount shall be the Settlement Amount ($85,000,000.00) plus the Supplemental Settlement Amount, as calculated pursuant to Paragraph 1 of Exhibit B of the Settlement Agreement.

**(b)** Second, the Fee-Cost-and-Effort Amount shall be determined. The Fee-Cost-and-Effort Amount shall be the total sum of (i) the Fee and Expense Award plus (ii) the Notice and Administration Costs plus (iii) Plaintiffs' Time-and-Effort Amount.

**(c)** Third, the Fee-Cost-and-Effort Amount shall be multiplied by the Settlement Amount divided by the Total Settlement Amount (as defined in Subparagraph (a) above). The product resulting from that calculation, rounded down to the nearest penny, shall be the portion of the Fee-Cost-and-Effort Amount that shall be paid from the Settlement Amount. The remaining portion of the Fee-Cost-and-Effort Amount, not thus designated for payment from the Settlement Amount, shall be paid from the Supplemental Settlement Amount.

Example.[2]  The Settlement Amount is $85,000,000.00. If 100% of potential Deemed Settlement Class Members agree, in a timely manner in accordance with the Settlement Agreement, to be bound by the Settlement Agreement, the Supplemental Payment Amount will

---

[2] This hypothetical example does not include reimbursable expenses of Class Counsel that such counsel would seek in addition to fees as part of the Fee and Cost Award.

be $3,000,000.00, pursuant to Paragraph 1 of Exhibit B. The Total Settlement Amount would therefore be $88,000,000.00. If the Court approves a 25% Fee and Expense Award and Notice and if Administration Costs are $500,000.00, and given that the Plaintiffs' Time-and-Effort Amount is $87,500.00, the total Fee-Cost-and-Effort Amount would be $22,587,500.00 (*i.e.*, ($88,000,000.00 x 25%) + $500,000.00 + $87,500.00 = $22,587,500.00). The portion of that Fee-Cost-and-Effort Amount to be paid from the Settlement Amount would be $21,817,471.59 (*i.e.*, $22,587,500.00 x ($85,000,000.00 ÷ $88,000,000.00)), and the remaining $770,028.41 of the Fee-Cost-and-Effort Amount (*i.e.*, $22,587,500.00 - $21,817,471.59) would be paid from the Supplemental Settlement Amount. The total portion of the Settlement Amount remaining to be used for payment to the Opt-In Class Members would be $63,182,528.41 (*i.e.*, $85,000,000.00 - $21,817,471.59); and the total portion of the Supplemental Settlement Amount remaining to be used for payment to the Deemed Settlement Class Members would be $2,229,971.59 (*i.e.*, $3,000,000.00 - $770,028.41).

      **3.**     <u>**Settlement Amount Shares and Their Calculation.**</u>  Each Opt-In Class Member's Settlement Amount Share shall be a portion of the Settlement Amount that is net of the deductions from the Settlement Amount for the Fee-Cost-and-Effort Amount provided for in this exhibit's Paragraph 2 above (the "Net Settlement Amount"). The Settlement Administrator shall determine each Settlement Amount Share using the calculations set forth in this paragraph's Subparagraphs (a) through (f).

        **(a)** <u>First</u>, the Net Settlement Amount shall be determined by deducting the portion of the Fee-Cost-and-Effort Amount from the Settlement Amount provided for by this Exhibit's Paragraph 2 above.

        **(b)** <u>Second</u>, for each Crop Year, the "Member Crop-Year Reserve Quantity" for each Opt-In Class Member, and the "Crop-Year Reserve Quantity," shall be determined.

(1) The Member Crop-Year Reserve Quantity, for a given Opt-In Class Member and Crop Year, shall be the total quantity in tons of all the raisins, belonging to that member, that were set aside pursuant to the California Raisin Handling Order in the reserve pool for that Crop Year—as shown by the records of the RAC or (as set forth in paragraph 4(a), below) Sun-Maid.

(2) The Crop-Year Reserve Quantity for a given Crop Year shall be the sum total of all the Member Crop-Year Reserve Quantities, for all Opt-In Class Members, for that Crop Year.

(c) <u>Third</u>, the Member Crop-Year Reserve Quantity for each Opt-In Class Member and Crop Year, and the Crop-Year Reserve Quantity for each Crop Year, shall each be given a nominal value (the "Member Crop-Year RQNV," for a given Opt-In Class Member and Crop Year, and the "Crop-Year RQNV," respectively). These nominal values shall be calculated, as explained below, using, solely for purposes of the calculations herein, the Crop Years' per-ton raisin "field prices," published in the Federal Register, *see,* e.*g.*, 75 Fed. Reg. 47,490, 47,491 (2010) (Table 1), and per-reserve-ton amounts for Net Grower's Equity (Before State Advertising).[3]

(1) The Member Crop-Year RQNV, for a given Opt-In Class Member and Crop Year, shall be the product of the Member Crop-Year Reserve

---

[3] For a given Crop Year, the per-reserve-ton "Net Grower's Equity (Before State Advertising)" amount shall be the amount shown, on the RAC's final "Statement of Disposition and Grower Equity" for the Crop Year, as "Net Grower's Equity (Before State Advertising)" (based on reserve) or as "Gross Growers Equity" (based on reserve), in the column corresponding to the reserve percentage for that Crop Year. The Crop Years' per-ton field prices, and per-reserve-ton Net Grower's Equity (Before State Advertising), are shown in the table below.

| Crop Year | Field Price Per Ton | Net Grower's Equity (Before State Advertising) | Nominal Value (Calculated) |
|---|---|---|---|
| 2002–2003 | $745.00 | $272.73 | $472.27 |
| 2003–2004 | $810.00 | $15.76 | $794.24 |
| 2005–2006 | $1,210.00 | $18.59 | $1,191.41 |
| 2006–2007 | $1,210.00 | $18.91 | $1,191.09 |
| 2007–2008 | $1,210.00 | $20.00 | $1,190.00 |
| 2008–2009 | $1,310.00 | $20.77 | $1,289.23 |
| 2009–2010 | $1,323.00 | $112.23 | $1,210.77 |

Quantity, for that member and Crop Year, multiplied by the difference between the field price for that Crop Year and the per-reserve-ton Net Grower's Equity (Before State Advertising) amount for that Crop Year, with that product rounded down to the nearest penny.  Thus, for a given Opt-In Class Member and Crop Year:  Member Crop-Year RQNV (for that member and Crop Year) = Crop-Year Reserve Quantity (for that member and Crop Year) x [Crop-Year Field Price (for that Crop Year) – the per-reserve-ton Net Grower's Equity (Before State Advertising) amount (for that Crop Year)], with that product rounded down to the nearest penny.

**(2)** The Crop-Year RQNV, for a given Crop Year, shall be the sum total of all the Member Crop-Year RQNVs, for all Opt-In Class Members, for that Crop Year.

**(d)** <u>Fourth</u>, the "Member RQNV" for each Opt-In Class Member, and the "RQNV" for all Opt-In Class Members, shall be determined.

**(1)** The Member RQNV, for a given Opt-In Class Member shall be the sum total of all the Member Crop-Year RQNVs, for that member, for all the Crop Years.

**(2)** The RQNV shall be the sum total of all the Member RQNVs for all the Opt-In Class Members.

**(e)** <u>Fifth</u>, the "Member RQNV Percentage" for each Opt-In Class Member shall be determined.  The Member RQNV Percentage, for a given Opt-In Class Member, shall be equal to the Member RQNV, for that member, divided by the RQNV (with the resulting quotient expressed as a non-rounded percentage).  Thus, for a given Opt-In Class Member:  Member RQNV Percentage (for that member) = Member RQNV (for that member) ÷ RQNV.

**(f)** <u>Sixth</u>, the Settlement Amount Share for each Opt-In Class Member shall be determined.  The Settlement Amount Share for a given Opt-In Class Member shall be the product of the Net Settlement Amount multiplied by the Member RQNV Percentage for that member, with that product rounded down to the nearest penny.  Thus, for a given Opt-In Class Member:  Settlement Amount Share (for that member) = Net Settlement Amount x Member RQNV Percentage (for that member), with that product rounded down to the nearest penny.

<u>Example.</u>  If the Net Settlement Amount is $63,182,528.41 and if a particular Opt-In

Class Member's reserve raisins for all the Crop Years have a total nominal value (a Member

RQNV) that is one percent of the nominal value of all Opt-In Class Members' reserve raisins for

all the Crop Years (*i.e.*, one percent of the RQNV), then that member's Settlement Amount

Share would be calculated as follows:  Settlement Amount Share (for that member) =

$63,182,528.41 x 1% = $631,825.28.

4.  **Sun-Maid Settlement Class Members.**

(a)  Certain Settlement Class Members (the "Sun-Maid Members," as defined in Subparagraph (b) of this paragraph) delivered raisins through Sun-Maid, and Sun-Maid reported to the RAC all such deliveries, in a given Crop Year, collectively as a single figure for that Crop Year.  (For clarity, Sun-Maid may, in its own right, be a Sun-Maid Member for reserve raisins for which it is the producer in its own right, as stated in Subparagraph (d) of this paragraph.)  All reserve raisins belonging to the quantity of raisins thus reported, for any given Crop Year, shall be treated, solely for purposes of the calculations above, *as if* those reserve raisins collectively constituted the deliveries of a single Settlement Class Member[4]; *provided*, however, that the total quantity of such reserve raisins, for a given Crop Year, shall be reduced by the quantity of reserve raisins of every grower or producer that previously and expressly, in writing to Sun-Maid, declined to be included in the Settlement Class or that withdraws from the Settlement Class pursuant to Paragraph 44 of the Settlement Agreement.  The remaining quantity of reserve raisins, for a given Crop Year, shall constitute the "Sun-Maid Members' Crop-Year Reserve Quantity" for that year; the sum of all Sun-Maid Members' Crop-Year Reserve Quantities, for all the Crop Years, shall constitute the "Sun-Maid Members' Total Reserve Quantity"; the Settlement Amount Share appropriate for the Sun-Maid Members' Total Reserve Quantity shall constitute the "Sun-Maid Members' Total Settlement Amount Share"; and the "Sun-Maid Members' Crop-Year Settlement Amount Share," for a given Crop Year, shall

---

[4] In case of any inconsistency among the records of the RAC and the records of Sun-Maid as to the total quantity of Sun-Maid Reserve Raisins for any Crop Year, the RAC's records shall take precedence over Sun-Maid's records and the total quantity in Sun-Maid's records for the Crop Year shall be deemed adjusted, for purposes of the calculations and distributions addressed herein, to match the RAC's records, with the quantities of all the Sun-Maid Members' Sun-Maid Reserve Raisins shown in Sun-Maid's records for that Crop Year adjusted *pro rata* so that the total of all such quantities equals this adjusted total Sun-Maid quantity.  For any Crop Year for which neither the RAC's records nor Sun-Maid's records show any reserve raisins for a Settlement Class Member, that member shall be deemed to have delivered no reserve raisins for that Crop Year.

be the Sun-Maid Members' Total Settlement Amount Share allocable to that Crop Year.

**(b)** For each Crop Year, the Sun-Maid Members shall be all the Settlement Class Members that, in their capacity as raisin producers, delivered raisins that are part of the raisins (1) shown, by the records of the RAC, as provided for that Crop Year by Sun-Maid and (2) that were set aside, pursuant to the California Raisin Handling Order, in reserve pools for that Crop Year; *provided*, however, that growers and producers shall qualify as such Sun-Maid Members, for a given Crop Year, only to the extent that they thus delivered reserve raisins ("Sun-Maid Reserve Raisins").  For example, if any Sun-Maid Member, for a given Crop Year, thus delivered Sun-Maid Reserve Raisins *and also* delivered other reserve raisins in his/her/its own capacity or in some other capacity other than as a Sun-Maid Member, then that grower or producer shall be treated as a Sun-Maid Member only with respect to his/her/its Sun-Maid Reserve Raisins for that Crop Year.  To the extent that any raisins qualify as Sun-Maid Reserve Raisins for a given Crop Year but are also shown, by the records of the RAC or otherwise, to be the same reserve raisins shown by the records of the RAC as delivered by a producer in a capacity other than as a Sun-Maid Member, then those raisins shall not be counted as Sun-Maid Reserve Raisins for purposes of the calculations above, to avoid duplicative Settlement Amount Shares.

**(c)** For each Sun-Maid Member, Sun-Maid shall inform the Settlement Administrator of the name of the member, the member's address, and the member's total quantity (in tons) of reserve raisins in each Crop Year's Sun-Maid Members' Crop-Year Reserve Quantity.  The Settlement Administrator shall then calculate the Settlement Amount Share of each and every Sun-Maid Member pursuant to the Settlement Agreement, by (1) multiplying the Sun-Maid Members' Crop-Year Settlement Amount Share, for each Crop Year, by the fraction of (a) the member's quantity (in tons) of reserve raisins in that Crop Year's Sun-Maid Members' Crop-Year Reserve Quantity divided by (b) the Sun-Maid Members' Crop-Year Reserve Quantity, with the resulting monetary value rounded down to the nearest penny; and then (2) adding together the resulting, rounded dollar value, for that member, for each of the Crop Years.

**(d)** Sun-Maid shall receive for itself, and may retain, a Settlement Amount Share if and only if, and only to the extent that, Sun-Maid is an Opt-In Class Member in its own right with respect to reserve raisins that it delivered in its own capacity as a raisin producer, and not on behalf of any other producer, during the Crop Years.

DM_US 160364534-1.097859.0011

<u>**EXHIBIT B**</u>

This exhibit explains how the Settlement Administrator shall calculate Supplemental

Settlement Amount Shares of Deemed Settlement Class Members under the Settlement

Agreement.[1]

     **1.**    <u>**The SSA Calculation.**</u>  The Settlement Administrator shall first determine the

total dollar value of the Supplemental Settlement Amount ("SSA") based on the calculations set

forth in this paragraph's Subparagraphs (a) through (d).

     **(a)** <u>First</u>, the "Total Reserve Quantity" (or "TRQ") shall be determined.  The TRQ shall be the sum total in tons of all the raisins, whether from Settlement Class Members or not, that were set aside in reserve pools, pursuant to the California Raisin Handling Order, for any and all of the Crop Years—as shown by the records of the RAC.

     **(b)** <u>Second</u>, the Deemed Settlement Class Members' "Supplemental Reserve Quantity" (or "SRQ") shall be determined.  The SRQ shall be the sum total in tons of all the raisins, belonging to Deemed Settlement Class Members, that were set aside in reserve pools, pursuant to the California Raisin Handling Order, for any and all of the Crop Years—as shown by the records of the RAC or (as set forth in Paragraph 4, below) Sun-Maid.

     **(c)** <u>Third</u>, the "Supplemental Reserve Percentage" (or "SRP") shall be determined.  The SRP shall be equal to the SRQ divided by the TRQ (with the resulting quotient expressed as a non-rounded percentage)—provided, however, that regardless of the quantities represented by the TRQ and the SRQ, the SRP shall not exceed six percent (solely for purposes of the Settlement Agreement and the calculations herein).  Thus, as used herein: SRP = SRQ ÷ TRQ, except that the SRP may not exceed six percent.  <u>For example</u>, if SRQ ÷ TRQ equals 6.5 percent, then the SRP shall be six percent.

     **(d)** <u>Fourth</u>, the SSA shall be determined.  The SSA shall be the product of $500,000.00 multiplied by the number of percentage points, or fractions thereof, in the SRP (up to the SRP's maximum of six percentage points), with the product rounded down to the nearest penny.  <u>For example</u>, if the SRP is

---

[1] All definitions of terms set forth in the Settlement Agreement, of which this Exhibit B is a part, shall apply to those same terms where used in this exhibit.  All references in this exhibit to raisins refer to Natural Seedless raisins.

3.5 percent, then the SRP has 3.5 percentage points and the SSA shall be calculated as follows:  SSA = $500,000.00 x 3.5 = $1,750,000.00.

**2.**     **Deduction of the Fee and Expense Award, Notice and Administration Costs, and Plaintiffs' Time-and-Effort Amount from the Settlement Amount and the SSA.**  After determining the SSA, the Settlement Administrator shall pay the Fee and Expense Award, the Notice and Administration Costs, and Plaintiffs' Time-and-Effort Amount (collectively, the "Fee-Cost-and-Effort Amount") from the Settlement Amount and the SSA in accordance with the Settlement Agreement's Exhibit A, Paragraph 2.

**3.**     **SSA Shares and Their Calculation.**  Each Deemed Settlement Class Member's SSA Share shall be a portion of the SSA that is net of deductions from the SSA for the Fee-Cost-and-Effort Amount provided for in this exhibit's Paragraph 2 above (the "Net SSA").  The Settlement Administrator shall determine each SSA Share using the calculations set forth in this paragraph's Subparagraphs (a) through (f).

    **(a)** <u>First</u>, the Net SSA shall be determined by deducting the portion of the Fee-Cost-and-Effort Amount from the SSA provided for by this Exhibit's Paragraph 2 above and the Settlement Agreement's Exhibit A, Paragraph 2.

    **(b)** <u>Second</u>, for each Crop Year, the "Member Crop-Year Supplemental Reserve Quantity" (or "Member Crop-Year SRQ") for each Deemed Settlement Class Member, and the "Crop-Year Supplemental Reserve Quantity" (or "Crop-Year SRQ"), shall be determined.

        **(1)** The Member Crop-Year SRQ, for a given Deemed Settlement Class Member and Crop Year, shall be the total quantity in tons of all the raisins, belonging to that member, that were set aside, pursuant to the California Raisin Handling Order, in the reserve pool for that Crop Year—as shown by the records of the RAC or (as set forth in Paragraph 4, below) Sun-Maid.

        **(2)** The Crop-Year SRQ for a given Crop Year shall be the sum total of all the Member Crop-Year SRQs, for all Deemed Settlement Class Members, for that Crop Year.

**(c)** <u>Third</u>, the Member Crop-Year SRQ for each Deemed Settlement Class Member and Crop Year, and the Crop-Year SRQ for each Crop Year, shall each be given a nominal value (the "Member Crop-Year SRQNV," for a given Deemed Settlement Class Member and Crop Year, and "Crop-Year SRQNV," respectively).  These nominal values shall be calculated, as explained below, using, solely for purposes of the calculations herein, the Crop Years' per-ton raisin "field prices," published in the Federal Register, *see, e.g.*, 75 Fed. Reg. 47,490, 47,491 (2010) (Table 1), and per-reserve-ton amounts for Net Grower's Equity (Before State Advertising).[2]

**(1)** The Member Crop-Year SRQNV, for a given Deemed Settlement Class Member and Crop Year, shall be the product of the Member Crop-Year SRQ, for that member and Crop Year, multiplied by the difference between the field price for that Crop Year and the per-reserve-ton Net Grower's Equity (Before State Advertising) amount for that Crop Year, with that product rounded down to the nearest penny.  Thus, for a given Deemed Settlement Class Member and Crop Year:  Member Crop-Year SRQNV (for that Crop Year and member) = Crop-Year SRQ (for that member and Crop Year) x [Crop-Year Field Price (for that Crop Year) – the per-reserve-ton Net Grower's Equity (Before State Advertising) amount (for that Crop Year)], with that product rounded down to the nearest penny.

---

[2] For a given Crop Year, the per-reserve-ton "Net Grower's Equity (Before State Advertising)" amount shall be the amount shown, on the RAC's final "Statement of Disposition and Grower Equity" for the Crop Year, as "Net Grower's Equity (Before State Advertising)" or as "Gross Growers Equity" (based on reserve), in the column corresponding to the reserve percentage for that Crop Year.  The Crop Years' per-ton field prices, and per-reserve-ton Net Grower's Equity (Before State Advertising), are shown in the table below.

| Crop Year | Field Price Per Ton | Net Grower's Equity (Before State Advertising) | Nominal Value (Calculated) |
|---|---|---|---|
| 2002–2003 | $745.00 | $272.73 | $472.27 |
| 2003–2004 | $810.00 | $15.76 | $794.24 |
| 2005–2006 | $1,210.00 | $18.59 | $1,191.41 |
| 2006–2007 | $1,210.00 | $18.91 | $1,191.09 |
| 2007–2008 | $1,210.00 | $20.00 | $1,190.00 |
| 2008–2009 | $1,310.00 | $20.77 | $1,289.23 |
| 2009–2010 | $1,323.00 | $112.23 | $1,210.77 |

**(2)** The Crop-Year SRQNV, for a given Crop Year, shall be the sum total of all the Member Crop-Year SRQNVs, for all Deemed Settlement Class Members, for that Crop Year.

**(d)** <u>Fourth</u>, the "Member SRQNV" for each Deemed Settlement Class Member, and the "SRQNV" for all Deemed Settlement Class Members, shall be determined.

**(1)** The Member SRQNV, for a given Deemed Settlement Class Member, shall be the sum total of all the Member Crop-Year SRQNVs, for that member, for all the Crop Years.

**(2)** The SRQNV shall be the sum total of all the Member SRQNVs for all the Deemed Settlement Class Members.

**(e)** <u>Fifth</u>, the "Member SRQNV Percentage" for each Deemed Settlement Class Member shall be determined. The Member SRQNV Percentage, for a given Deemed Settlement Class Member, shall be equal to the Member SRQNV, for that member, divided by the SRQNV (with the resulting quotient expressed as a non-rounded percentage). Thus, for a given Deemed Settlement Class Member: Member SRQNV Percentage (for that member) = Member SRQNV (for that member) ÷ SRQNV.

**(f)** <u>Sixth</u>, the SSA Share for each Deemed Settlement Class Member shall be determined. The SSA Share for a given Deemed Settlement Class Member shall be the product of the Net SSA multiplied by the Member SRQNV Percentage for that member, with that product rounded down to the nearest penny. Thus, for a given Deemed Settlement Class Member: SSA Share (for that member) = Net SSA x Member SRQNV Percentage (for that member), with that product rounded down to the nearest penny.

<u>Example.</u> If the Net SSA is $2,229,971.59 and if a particular Deemed Settlement Class Member's reserve raisins for all the Crop Years have a total nominal value (a Member SRQNV) that is five percent of the nominal value of all Deemed Settlement Class Members' reserve raisins for all the Crop Years (*i.e.*, five percent of the SRQNV), then that member's SSA Share would be calculated as follows: SSA Share (for that member) = $2,229,971.59 x 5% = $111,498.57.

**4.** **<u>Sun-Maid Deemed Settlement Class Members.</u>**

**(a)** Every raisin producer that qualifies as one of the "Sun-Maid Members," as defined in this Settlement Agreement's Exhibit A, Paragraph 4(b), but that

previously and expressly, in writing to Sun-Maid, declined to be included in the Settlement Class, may agree to be bound by the Settlement Agreement and thus become a Deemed Settlement Class Member, as provided for in the Settlement Agreement.  Any such producer shall be a "Sun-Maid Deemed Settlement Class Member."

**(b)** For each Sun-Maid Deemed Settlement Class Member, Sun-Maid shall inform the Settlement Administrator of the name of the member, the member's address, and the member's total quantity (in tons) of reserve raisins included in each Crop Year's Sun-Maid Members' Crop-Year Reserve Quantity (as defined in Exhibit A's Paragraph 4(a)) for each Crop Year—with each such quantity, for each of the Crop Years, then being used by the Settlement Administrator to calculate the SSA Share for that Sun-Maid Deemed Settlement Class Member. [3]

DM_US 160364619-1.097859.0011

---

[3] In case of any inconsistency among the records of the RAC and the records of Sun-Maid as to the total quantity of Sun-Maid Reserve Raisins for any Crop Year, the RAC's records shall take precedence over Sun-Maid's records (as explained in footnote 4 of Exhibit A of this Settlement Agreement).  For any Crop Year for which neither the RAC's records nor Sun-Maid's records show any reserve raisins for a Deemed Settlement Class Member, that member shall be deemed to have delivered no reserve raisins for that Crop Year.

<u>IN THE UNITED STATES COURT OF FEDERAL CLAIMS</u>

**Notice of Proposed Final Settlement of Class Action
Against the United States**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

TO:   [Name]
       [Address]
       Control Number: [###]

[INSERT BARCODE HERE]

## I.   <u>WHY ARE YOU RECEIVING THIS NOTICE?</u>

You are receiving this Notice because our records show that, in 2017, you joined the class-action lawsuit, *Ciapessoni, et al. v. United States*, Case No. 1:15-cv-00938 (Fed. Cl.). The purpose of this Notice is to inform you of a proposed settlement of this class-action litigation and of your legal rights with respect to the proposed settlement. Capitalized terms in this Notice are defined in the parties' Settlement Agreement.  A copy of the Settlement Agreement, with its exhibits, is available at www.reserveraisinsclassaction.com.

**Your legal rights are affected whether you act or do not act. Read this Notice carefully.**

To the extent that this Notice conflicts with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

### <u>Background</u>

The lawsuit, *Ciapessoni, et al. v. United States*, was commenced by a group of plaintiffs in 2015 ("Plaintiffs" or "Class Representatives"). In the lawsuit, Plaintiffs sought just compensation from the United States Government for raisins produced by Class Members and subsequently ordered by the USDA to be set aside in "reserve pools" pursuant to the California Raisin Handling Order (the "Marketing Order"). The Plaintiffs allege that this "reserving" of raisins constituted a taking of private property for public use, which requires compensation under the Fifth Amendment to the United States Constitution.

This lawsuit's defendant, *i.e.*, the Government of the United States of America, denies that the raisin reserve requirement caused any unconstitutional taking requiring compensation and denies that the Class is entitled to any compensation for any such taking. The United States Government further contends that the lawsuit is barred, except as to claims concerning the 2009–2010 raisin crop year, by the applicable statutes of limitations. The Court determined that the only raisin crop years not

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

barred by the statute of limitations are the 2002–2003, 2003–2004, 2005–2006, 2006–2007, 2007–2008, 2008–2009, and 2009–2010 crop years (the "Crop Years"). These seven Crop Years are the only crop years still at issue in this lawsuit. The United States Government has expressly reserved its right to appeal the Court's denial of its statute-of-limitations defenses, as to all the Crop Years other than the 2009–2010 Crop Year, if this lawsuit is not resolved by the proposed settlement.

In 2017, the Court certified this litigation as a class action and stated that only the following could "opt in" to or join this litigation as members of its "Class":

> All producers as defined in 7 C.F.R. § 989.11 and other persons as defined in 7 C.F.R. § 989.3 (collectively, "Producers") whose Natural Seedless raisins were acquired by handlers pursuant to 7 C.F.R. § 989.17 and set aside for the account of the Raisin Administrative Committee pursuant to 7 C.F.R. § 989.66(a) in the [Crop Years]; however, notwithstanding anything in this order to the contrary, this class shall exclude all Producers named as plaintiffs in *Evans v. United States*, No. 06-439 (Fed. Cl.), from any claim concerning a crop year prior to the 2007–2008 crop year.  For clarity: any Class claim(s) shall not concern a crop year other than the [Crop Years].

Plaintiffs subsequently sent notice of this certified class-action litigation by U.S. mail to 6,397 potential Class members identified by the parties and informed those potential Class members of their ability to "opt in" to the Class and that, unless they opted in, they would not be members of the Class. Plaintiffs also notified potential Class members of the litigation, and the need to opt in to be members of the Class, through radio and newspaper advertisement campaigns. In response, Plaintiffs received 4,182 completed opt-in forms. In addition, Sun-Maid Growers of California ("Sun-Maid") and the Raisin Bargaining Association ("RBA"), two raisin-producer cooperatives, submitted opt-in forms on behalf of their members.[1] (All potential Class members that submitted opt-in forms in 2017, or on whose behalf Sun-Maid or the RBA submit opt-in forms in 2017, are collectively referred to in the Settlement Agreement and in this notice as the "Opt-In Class Members.")

To settle this lawsuit, Plaintiffs, on behalf of all Class members, and the United States Government have negotiated and signed a Settlement Agreement, which has already been preliminarily approved by the Court. Under the terms of this Settlement Agreement, the United States Government will pay $85,000,000.00 (the "Settlement Amount") to settle all the claims of all the Opt-In Class Members and to pay Plaintiffs' attorney fees and other fees and expenses associated

---

[1] Sun-Maid's group opt-in excludes 13 raisin producers who are members of Sun-Maid but who affirmatively requested not to be included in Sun-Maid's group opt-in.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

with this litigation and settlement, as stated in the Settlement Agreement. All Opt-In Class Members are already bound to, and will obtain the benefits of, the Settlement Agreement if it is finally approved by the Court and not subject to further appeal—and, as explained below, all Opt-In Class Members also have a set period of time to submit a written objection to any of the Settlement Agreement's terms.[2]

The Settlement Agreement, if finally approved by the Court and not subject to further appeal, also requires the United States Government to pay between $0.00 and $3,000,000.00 (the "Supplemental Settlement Amount") to settle all the potential claims of raisin producers that were potential Class members but are not the litigation's Plaintiffs, are not Opt-In Class Members, and are not parties to the related litigation, *Lion Farms, LLC v. United States*, (Fed. Cl. No. 1:15-cv-00915-LAS), and that, during a 30-day period allowed for by the Settlement Agreement, agree to be bound by the agreement ("Deemed Settlement Class Members"). The Settlement Agreement requires the precise value of the Supplemental Settlement Amount to be determined based upon the calculation explained in the Settlement Agreement's Exhibit B, paragraph 1. However, because the Supplemental Settlement Amount, used to pay any Deemed Settlement Class Members, is distinct from the Settlement Amount used to pay Opt-In Settlement Class Members, any payment to Deemed Settlement Class Members will not reduce at all any Opt-In Class Member's share of the Settlement Amount.  Thus, the agreement of any producer to be bound to the Settlement Agreement as a Deemed Settlement Class Member will in no way affect any amount to be received by any Opt-In Class Member.  Deemed Settlement Class Members' shares of the Supplemental Settlement Amount are also smaller, per ton of reserved raisins, than Opt-in Class Members' shares of the Settlement Amount, per ton of reserved raisins, in part because Deemed Settlement Class Members did not opt into the Class, can no longer opt into the Class, and are not Opt-In Class Members, but are being allowed to join in the settlement, if they agree to do so, to make the settlement more comprehensive. (Solely for convenience, all Opt-In Class Members, along with any and all Deemed Settlement Class Members, are collectively referred to in the Settlement Agreement and in this notice as the "Settlement Class Members.") In exchange for the United States Government's agreement to the Settlement Agreement, all Settlement Class Members release, waive, abandon, and permanently discharge the United States Government from all "Released Claims," as defined by the Settlement Agreement (at Paragraph 1.EE).  Released Claims include all claims asserted by, arising under, or otherwise relating to the complaint in this class-action litigation and/or any amended version of that complaint.

---

[2] Sun-Maid and RBA members who did not submit individual opt-in forms will also have an opportunity to withdraw from the Settlement Class during the period for objecting to the Settlement Agreement.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

The Settlement Agreement's terms described here were reached through extensive negotiations between Plaintiffs and the United States over a period of more than one year. The Plaintiffs and Class Counsel believe that the Settlement Agreement is fair, reasonable, and the best result for all Settlement Class Members. Class Counsel also retained the services of retired federal judge Oliver W. Wanger to review the dollar amount and other principal terms of the settlement. (Oliver Wanger served as a United States District Judge for the Eastern District of California in Fresno for over 20 years, from 1991 until his retirement in 2011.) Judge Wanger agrees that the Settlement Agreement is fair, just, reasonable, and in the best interest of all Settlement Class Members in light of the challenges and costs of ongoing litigation against the Federal Government.

## II.   WHAT ARE THE FINANCIAL TERMS OF THIS SETTLEMENT?

### A.   How much money will you receive?

Under the Settlement Agreement, your share of the Settlement Amount is determined based upon dividing the Settlement Agreement's assessed value of all your reserved raisins for the Crop Years (*i.e.*, all the reserved raisins that you delivered during the Crop Years) by the Settlement Agreement's assessed value of all the reserved raisins delivered by all the Opt-In Class Members during the Crop Years—with the resulting fraction expressed as a percentage that is then multiplied by the Settlement Amount already net of attorney fees and other fees and expenses associated with this litigation and settlement (*i.e.*, with such fees and expenses already deducted from the Settlement Amount), as stated in the Settlement Agreement. Also, if you have a debt to the Federal Government, that debt might be deducted from what you would otherwise recover from the settlement. The settlement administrator will then send to you, by check (see below), any positive amount resulting from the calculations just described. Further explanations of the calculations of the Opt-In Class Members' shares of the net Settlement Amount are in Exhibit A to the Settlement Agreement, available at www.reserveraisinsclassaction.com.

### B.   How will you be paid?

Any amount due to you would be paid to you by a check sent from the Settlement Administrator. Under the Settlement Agreement, if you do not cash your check within 365 days from the date that it is issued, the check will become void and the amount of the check will be returned to, and be the property of, the United States.

### C.   Who will pay attorneys' fees and other expenses?

You will have no out-of-pocket obligation to pay any attorney fees or other fees and expenses associated with this lawsuit and settlement. Instead, the Settlement Amount and the Supplemental Settlement Amount (collectively, the "Common Fund") will pay for all those fees and costs. Class Counsel has proposed that the Court approve payment of attorney fees totaling up to 25% of the

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit C
Page 4 of 7

Common Fund amount. Class Counsel will also seek reimbursement from the Common Fund of reasonable and allowable litigation expenses, and will request payment from the Common Fund to compensate the Settlement Administrator, which handles administrative tasks related to the Settlement Agreement and payments from the Common Fund. In addition, this litigation's seven named Plaintiffs, who initiated this litigation and have served as its Class Representatives, will request a time-and-effort award of $12,500.00 each, totaling $87,500.00, for their assistance in this litigation, which will also be paid from the Common Fund. All these fees and expenses—including attorney fees, Settlement Administrator fees and expenses, and the time-and-effort award paid to Class Representatives—will be paid from the Common Fund, before any settlement shares are distributed to any Settlement Class Members. The funds for paying all such fees and expenses will be drawn, on a proportional basis, from the Settlement Amount and the Supplemental Settlement Amount that together make up the Common Fund, as explained in the Settlement Agreement's Exhibit A, paragraphs 1-2.

> **D.** **How much will Deemed Settlement Class Members receive, and will any payment to Deemed Settlement Class Members affect how much you receive?**

As stated above, under the Settlement Agreement, each Deemed Settlement Class Member's share, per ton of reserved raisins, of the Supplemental Settlement Amount will be less than, and will not reduce, any Opt-In Class Member's share, per ton of reserved raisins, of the Settlement Amount. The calculation of the Deemed Settlement Class Members' shares of the Supplemental Settlement Amount are explained in the Settlement Agreement's Exhibit B.

## III.   WHAT ARE YOUR RIGHTS?

You have the right, for a limited period of time (explained below), to either object to any term of the Settlement Agreement or to request withdrawal from the class. You also have the right to attend and to participate in a public hearing ("Fairness Hearing") on [DATE] at [TIME] before the Honorable Loren A. Smith, United States Court of Federal Claims Judge, at the United States Court of Federal Claims, Howard T. Markey National Courts Building, 717 Madison Place, NW [Room #], Washington, DC 20439. At this hearing, the parties will request that the Court finally approve the proposed settlement as fair, reasonable and adequate. Only Opt-In Class Members who have provided either timely written objections to the Settlement Agreement or a timely request to withdraw and timely written notice of their intention to participate in the Fairness Hearing will be permitted to so participate.

To submit an objection to the Settlement Agreement, your objection must be in writing, state whether the objection applies only to you, to a specific subset of the class, or to the entire class, state with specificity the grounds for the objection, and include your name, address, phone number, email address, and the control number printed under your address on page 1 of this notice. If you

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit C
Page 5 of 7

are represented by an attorney, you must also include the full name, address, phone number, and email address of your attorney in your written objection. If you wish to personally participate in the Fairness Hearing or if you wish to have your attorney do so, your written objection must include a request to participate in the Fairness Hearing, either in person or through your attorney. To be considered by the Court, all objections to the Settlement Agreement, and all requests to participate in the Fairness Hearing, must be sent by U.S. mail, **postmarked by [DATE]**, to the following address:

> Reserve Raisins Class Action
> c/o KCC Class Action Administration
> P.O. Box 404011
> Louisville, KY 40233-4011

**Your legal rights and options are summarized in the table below.  Please note that your legal rights are affected whether you act or do not act.**

## Read this Notice carefully. Please do not contact the Court directly.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS CLASS ACTION | | YOUR DEADLINE |
|---|---|---|
| DO NOTHING AND PARTICIPATE IN THE SETTLEMENT | You are currently an Opt-In Class Member. You are not required to take any additional action to participate in this settlement, as an Opt-In Class Member, at this time. If the Court issues a final approval of the Settlement Agreement, and if that agreement as approved is no longer subject to further appeal, you will receive any share of the Settlement Amount due to you under the Settlement Agreement. | None |
| SUBMIT AN OBJECTION OR REQUEST WITHDRAWAL FROM THE CLASS | As an Opt-In Class Member, you may (but are not required to) submit an objection to the Court about whether it should issue a final approval of the Settlement Agreement or request withdrawal from the class. Any objection must state in writing whether the objection applies only to you, to a specific subset of the class, or to the entire class, state with specificity the grounds for the objection, and include your name, address, phone number, email, and the control number printed under your address on page 1 of this notice. If you are represented by an attorney in submitting an objection, you must also identify the full name, address, phone number, and email of your attorney. To be | [To be set by Court] |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit C
Page 6 of 7

| | | |
|---|---|---|
| | considered by the Court, all objections to the Settlement Agreement or requests to withdraw from the class must be sent by U.S. mail, **postmarked by [DATE]**, to the above address. | |
| SPEAK AT THE FAIRNESS HEARING TO OBJECT TO THE SETTLEMENT | As an Opt-In Class Member, if you submit a written objection, you or your attorney may also (but are not required to) appear in Court at the Fairness Hearing to speak about the fairness of the Settlement Agreement. If you intend to speak or to have your attorney speak at the Fairness Hearing, you must send a written objection (as stated above), and state in that objection that you intend either to appear personally at the Fairness Hearing or to be represented by your attorney (identified in the objection) at the Fairness Hearing. To participate in the Fairness Hearing, all such written notices must be sent by U.S. mail, **postmarked by [DATE]**, to the above address. | [To be set by Court] |
| CONTACT US | If you have questions, you may contact Class Counsel at any mailing address, or by using any email address, below.<br><br>Noah M. Schubert, Esq. (Co-Counsel)<br>Schubert Jonckheer & Kolbe LLP<br>3 Embarcadero Center, Suite 1650<br>San Francisco, CA 94111<br>(415) 788-4200<br>nschubert@sjk.law<br><br>Christopher M. Murphy, Esq. (Lead Counsel)<br>McDermott Will & Emery LLP<br>444 W. Lake Street, Suite 4000<br>Chicago, IL 60606-0029<br>(312) 372-2000<br>cmurphy@mwe.com<br><br>Please direct all inquiries to Class Counsel.<br><br>**Do NOT contact the Court directly.** | |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit C
Page 7 of 7

<u>IN THE UNITED STATES COURT OF FEDERAL CLAIMS</u>

**Notice of Proposed Final Settlement of Class Action
Against the United States**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

TO: [Name]
     [Address]
     Control Number: [###]

[INSERT BARCODE HERE]

## I.    <u>WHY ARE YOU RECEIVING THIS NOTICE?</u>

You are receiving this Notice because our records show (1) that you are a raisin grower or producer whose natural seedless raisins were acquired by handlers and placed in reserves for the account of the Raisin Administrative Committee in one or more of the 2002–2003 through 2009–2010 crop years, but (2) that you did not previously join (or "opt in" to) the class-action lawsuit, *Ciapessoni, et al. v. United States*, Case No. 1:15-cv-00938 (Fed. Cl.), and are not a member of either Sun-Maid Growers of California ("Sun-Maid") or the Raisin Bargaining Association ("RBA"), both of which are raisin-producer cooperatives that previously submitted opt-in forms on behalf of their members. The purpose of this Notice is to inform you of a proposed settlement of this class-action litigation and of your legal rights with respect to the settlement. Capitalized terms in this Notice are defined in the parties' Settlement Agreement.  A copy of the Settlement Agreement, with its exhibits, is available at www.reserveraisinsclassaction.com.

    **Your legal rights are affected whether you act or do not act. Read this Notice carefully.**

To the extent that this Notice conflicts with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

### <u>Background</u>

The lawsuit, *Ciapessoni, et al. v. United States*, was commenced by a group of plaintiffs in 2015 ("Plaintiffs" or "Class Representatives"). In the lawsuit, Plaintiffs sought just compensation from the United States Government for raisins produced by Class Members and subsequently ordered by the USDA to be set aside in "reserve pools" pursuant to the California Raisin Handling Order (the "Marketing Order"). The Plaintiffs allege that this "reserving" of raisins constituted a taking of private property for public use, which requires compensation under the Fifth Amendment to the United States Constitution.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

This lawsuit's defendant, *i.e.*, the Government of the United States of America, denies that the raisin reserve requirement caused any unconstitutional taking requiring compensation and denies that the Class is entitled to any compensation for any such taking. The United States Government further contends that the lawsuit is barred, except as to claims concerning the 2009–2010 raisin crop year, by the applicable statutes of limitations. The Court determined that the only raisin crop years not barred by the statute of limitations are the 2002–2003, 2003–2004, 2005–2006, 2006–2007, 2007–2008, 2008–2009, and 2009–2010 crop years (the "Crop Years"). These seven Crop Years are the only crop years still at issue in this lawsuit. The United States Government has expressly reserved its right to appeal the Court's denial of its statute-of-limitations defenses, as to all the Crop Years other than the 2009–2010 Crop Year, if this lawsuit is not resolved by the proposed settlement.

In 2017, the Court certified this litigation as a class action and stated that only the following could "opt in" to or join this litigation as members of its "Class":

> All producers as defined in 7 C.F.R. § 989.11 and other persons as defined in 7 C.F.R. § 989.3 (collectively, "Producers") whose Natural Seedless raisins were acquired by handlers pursuant to 7 C.F.R. § 989.17 and set aside for the account of the Raisin Administrative Committee pursuant to 7 C.F.R. § 989.66(a) in the [Crop Years]; however, notwithstanding anything in this order to the contrary, this class shall exclude all Producers named as plaintiffs in *Evans v. United States*, No. 06-439 (Fed. Cl.), from any claim concerning a crop year prior to the 2007–2008 crop year. For clarity: any Class claim(s) shall not concern a crop year other than the [Crop Years].

Plaintiffs subsequently sent notice of this certified class-action litigation by U.S. mail to 6,397 potential Class members identified by the parties and informed those potential Class members of their ability to "opt in" to the Class and that, unless they opted in, they would not be members of the Class. Plaintiffs also notified potential Class members of the litigation, and the need to opt in to be members of the Class, through radio and newspaper advertisement campaigns. In response, Plaintiffs received 4,182 completed opt-in forms. In addition, Sun-Maid Growers of California ("Sun-Maid") and the Raisin Bargaining Association ("RBA"), two raisin-producer cooperatives, submitted opt-in forms on behalf of their members.[1] (All potential Class members that submitted opt-in forms in 2017, or on whose behalf Sun-Maid or the RBA submit opt-in forms in 2017, are collectively referred to in the Settlement Agreement and in this notice as the "Opt-In Class Members.")

---

[1] Sun-Maid's group opt-in excludes 13 raisin producers who are members of Sun-Maid but who affirmatively requested not to be included in Sun-Maid's group opt-in.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

To settle this lawsuit, Plaintiffs, on behalf of all Class members, and the United States Government have negotiated and signed a Settlement Agreement, which has already been preliminarily approved by the Court. Under the terms of this Settlement Agreement, the United States Government will pay $85,000,000.00 (the "Settlement Amount") to settle all the claims of all the Opt-In Class Members and to pay Plaintiffs' attorney fees and other fees and expenses associated with the litigation and settlement, as stated in the Settlement Agreement. All Opt-In Class Members are already bound to, and will obtain the benefits of, the Settlement Agreement if it is finally approved by the Court and not subject to further appeal—and, as explained below, all Opt-In Class Members also have a set period of time to submit a written objection to any of the Settlement Agreement's terms.[2]

The Settlement Agreement, if finally approved by the Court and not subject to further appeal, also requires the United States Government to pay between $0.00 and $3,000,000.00 (the "Supplemental Settlement Amount") to settle all the potential claims of raisin producers that were potential Class members but are not the litigation's Plaintiffs, are not Opt-In Class Members, and are not parties to the related litigation, *Lion Farms, LLC v. United States*, (Fed. Cl. No. 1:15-cv-00915-LAS), and that, during a 30-day period allowed for by the Settlement Agreement, agree to be bound by the agreement ("Deemed Settlement Class Members"). The Settlement Agreement requires the precise value of the Supplemental Settlement Amount to be determined based upon the calculation explained in the Settlement Agreement's Exhibit B, paragraph 1. However, because the Supplemental Settlement Amount, used to pay any Deemed Settlement Class Members, is distinct from the Settlement Amount used to pay Opt-In Settlement Class Members, any payment to Deemed Settlement Class Members will not reduce at all any Opt-In Class Member's share of the Settlement Amount.  Thus, the agreement of any producer to be bound to the Settlement Agreement as a Deemed Settlement Class Member will in no way affect any amount to be received by any Opt-In Class Member.  Deemed Settlement Class Members' shares of the Supplemental Settlement Amount are also smaller, per ton of reserved raisins, than Opt-in Class Members' shares of the Settlement Amount, per ton of reserved raisins, in part because Deemed Settlement Class Members did not opt into the Class, can no longer opt into the Class, and are not Opt-In Class Members, but are being allowed to join in the settlement, if they agree to do so, to make the settlement more comprehensive. (Solely for convenience, all Opt-In Class Members, along with any and all Deemed Settlement Class Members, are collectively referred to in the Settlement Agreement and in this notice as the "Settlement Class Members.") In exchange for the United States Government's agreement to the Settlement Agreement, all Settlement Class Members release, waive, abandon, and permanently discharge the United States Government from all "Released

---

[2] Sun-Maid and RBA members who did not submit individual opt-in forms will also have an opportunity to withdraw from the Settlement Class during the period for objecting to the Settlement Agreement.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit E
Page 3 of 9

Claims," as defined by the Settlement Agreement (at Paragraph 1.EE). Released Claims include all claims asserted by, arising under, or otherwise relating to the complaint in this class-action litigation and/or any amended version of that complaint.

The Settlement Agreement's terms described here were reached through extensive negotiations between Plaintiffs and the United States over a period of more than one year. The Plaintiffs and Class Counsel believe that the Settlement Agreement is fair, reasonable, and the best result for all Settlement Class Members. Class Counsel also retained the services of retired federal judge Oliver W. Wanger to review the dollar amount and other principal terms of the settlement. (Oliver Wanger served as a United States District Judge for the Eastern District of California in Fresno for over 20 years, from 1991 until his retirement in 2011.) Judge Wanger agrees that the Settlement Agreement is fair, just, reasonable, and in the best interest of all Settlement Class Members in light of the challenges and costs of ongoing litigation against the Federal Government.

## II.    WHAT ARE THE FINANCIAL TERMS OF THIS SETTLEMENT?

### A.    How much money will you receive?

If you agree to be bound to this Settlement Agreement so as to be a Deemed Settlement Class Member, then, under its terms, your share of the Supplemental Settlement Amount will be determined based upon dividing the Settlement Agreement's assessed value of all your reserved raisins for the Crop Years (*i.e.*, all the reserved raisins that you delivered during the Crop Years) by the Settlement Agreement's assessed value of all the reserved raisins delivered by all the Deemed Settlement Class Members during the Crop Years—with the resulting fraction expressed as a percentage that is then multiplied by the Supplemental Settlement Amount already net of a portion of the attorney fees and other fees and expenses associated with this litigation and settlement (*i.e.*, with a portion such fees and expenses already deducted from the Supplemental Settlement Amount), as stated in the Settlement Agreement. Also, if you have a debt to the Federal Government, that debt might be deducted from what you would otherwise recover from the settlement. The settlement administrator will then send to you, by check (see below), any positive amount resulting from the calculations just described. Further explanations of the calculations of the Deemed Settlement Class Members' shares of the net Supplemental Settlement Amount are in Exhibit B to the Settlement Agreement, available at www.reserveraisinsclassaction.com.

### B.    How will you be paid?

If you agree to be bound to this Settlement Agreement so as to be a Deemed Settlement Class Member, then any amount due to you pursuant to the Settlement Agreement would be paid to you by a check sent from the Settlement Administrator. Under the Settlement Agreement, any such

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit E
Page 4 of 9

check not cashed within 365 days from the date that it is issued will become void and the amount of the check will be returned to, and be the property of, the United States.

### C.   Who will pay attorneys' fees and other expenses?

You will have no out-of-pocket obligation to pay any attorney fees or other fees and expenses associated with this lawsuit and settlement. Instead, the Settlement Amount and the Supplemental Settlement Amount (collectively, the "Common Fund") will pay for all those fees and costs. Class Counsel has proposed that the Court approve payment of attorney fees totaling up to 25% of the Common Fund amount. Class Counsel will also seek reimbursement from the Common Fund of reasonable and allowable litigation expenses, and will request payment from the Common Fund to compensate the Settlement Administrator, which handles administrative tasks related to the Settlement Agreement and payments from the Common Fund. In addition, this litigation's seven named Plaintiffs, who initiated this litigation and have served as its Class Representatives, will request a time-and-effort award of $12,500.00 each, totaling $87,500.00, for their assistance in this litigation, which will also be paid from the Common Fund. All these fees and expenses—including attorney fees, Settlement Administrator fees and expenses, and the time-and-effort award paid to Class Representatives—will be paid from the Common Fund, before any settlement shares are distributed to any Settlement Class Members. The funds for paying all such fees and expenses will be drawn, on a proportional basis, from the Settlement Amount and the Supplemental Settlement Amount that together make up the Common Fund, as explained in the Settlement Agreement's Exhibit A, paragraphs 1-2.

## III.   WHAT ARE YOUR RIGHTS?

You have the right for a limited period of time—until [**DATE TBD**]—to agree to be bound to this Settlement Agreement so as to be a Deemed Settlement Class Member. To agree to be bound to this Settlement Agreement so as to be a Deemed Settlement Class Member, you must complete an Agreement to Be Bound form, which is attached to this notice, and submit the completed form as explained in the table below.

**Your legal rights and options are summarized in the table below. Please note that your legal rights are affected whether you act or do not act.**

**Read this Notice carefully. Please do not contact the Court directly.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS CLASS ACTION | | DUE DATE |
|---|---|---|
| DO NOTHING AND RECEIVE NOTHING | You are not currently a Settlement Class Member and will receive no benefits from the lawsuit. Keep your rights, if any, to sue the United States separately. | None |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

| | | |
|---|---|---|
| ASK TO BE INCLUDED (BECOME A DEEMED SETTLEMENT CLASS MEMBER) AND RECEIVE MONEY | If you agree to be bound to this Settlement Agreement so as to be a Deemed Settlement Class Member, and if the Court approves the settlement, the settlement's terms will bind you and you will receive any share of the Supplemental Settlement Amount due to you under the Settlement Agreement.<br><br>To agree to be bound to this Settlement Agreement so as to be a Deemed Settlement Class Member, you **must submit** a completed Agreement to Be Bound—a copy of which is attached to this notice—electronically, by facsimile, by first-class mail, or by pre-paid delivery service. The Agreement to Be Bound must be submitted, faxed, postmarked, or delivered by [**DATE TBD**]. The various locations and methods by which you may submit an Agreement to Be Bound are as follows:<br><br>**By Internet:** You can complete and submit the Agreement to Be Bound form online, using the bar code number provided at the top of this notice, at the following internet site with the following internet URL: www.reserveraisinsclassaction.com.<br><br>**By Mail:** You can mail your completed Agreement to Be Bound form to the Settlement Administrator at the following address:<br>    Reserve Raisins Class Action<br>    c/o KCC Class Action Administration<br>    P.O. Box 404011<br>    Louisville, KY 40233-4011<br><br>**By Facsimile:** You can send your completed Agreement to Be Bound form by sending a facsimile copy using the following facsimile number:<br>    1-866-763-9933 | [**To be set by Court**] |
| CONTACT US | If you have questions, you may contact Class Counsel at any mailing address, or by using any email address, below. | |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

| | | |
|---|---|---|
| | Noah M. Schubert, Esq. (Co-Counsel)<br>Schubert Jonckheer & Kolbe LLP<br>3 Embarcadero Center, Suite 1650<br>San Francisco, CA 94111<br>(415) 788-4200<br>nschubert@sjk.law<br><br>Christopher M. Murphy, Esq. (Lead Counsel)<br>McDermott Will & Emery LLP<br>444 W. Lake Street, Suite 4000<br>Chicago, IL 60606-0029<br>(312) 372-2000<br>cmurphy@mwe.com<br><br>Please direct all inquiries to Class Counsel.<br><br>**Do NOT contact the Court directly.** | |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

> **To be bound to the Settlement Agreement as a Deemed Settlement Class Member, you must complete and submit this form within the time period stated below.**

## <u>AGREEMENT TO BE BOUND</u>

**(Agreement to Be Bound to Class-Action Settlement Agreement
as Deemed Settlement Class Member)**

UNITED STATES COURT
OF FEDERAL CLAIMS

*Ciapessoni, et al. v. United States*
Case No. 1:15-cv-00938

[INSERT BARCODED ADDRESS HERE]

1.      Fill out this form completely and legibly. **It must be submitted, postmarked, or faxed to the Settlement Administrator (who has been retained by Class Counsel for this case and whose address is in the table at Paragraph 3 above) by [DATE TBD].**

PLEASE NOTE: The Notice has been sent to your address based on information in the records of the Raisin Administrative Committee (RAC). Any person that signs this form or submits it online on behalf of the recipient of this notice must have legal authority to do so. It is your responsibility to ensure that the information that you provide on this form is complete and accurate, and that the person signing this form or submitting it online, is legally authorized to bind the person or entity identified above.

2.      By signing your name in the space below or by submitting this form online, you are declaring under penalty of perjury under the laws of the United States and applicable state laws:

(a)   That the recipient(s) of this notice wish(es) to participate in the Class Action settlement (concerning the lawsuit, *Ciapessoni, et al. v. United States*), described in the accompanying Notice;

(b)   That the recipient(s) of this notice agree(s) to be bound by the terms of the Settlement Agreement described in the accompanying Notice and available from Class Counsel (identified in that Notice) and online at www.reserveraisinsclassaction.com; and

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

(c)  That you are authorized to sign this form, or to submit the form online, on behalf of the recipient(s) of this Notice, agree to bind such recipient(s) by doing so, and agree to serve as the point of contact for purposes of this Agreement to Be Bound and the Settlement Agreement.

**By signing this form or submitting it online, you are declaring under penalty of perjury that the recipient of this notice agrees to be bound by the terms of the Settlement Agreement and that you are authorized to sign this form or to submit it online on behalf of the recipient:**

**Sign Your Name**: _____ **Date**: _____

**Print Your Name**: _____

**Print Your Address**: _____

**Telephone Number**: _____

**Email Address**: _____

3.      This form may be submitted online, by mail, or by fax:

> **By Internet**:     http://www.reserveraisinsclassaction.com/[**ADD SUB-URL**]
> (You can complete this form online at the above URL using the bar code number provided at the top of this form.)
>
> **By Mail**:     Reserve Raisins Class Action
> c/o KCC Class Action Administration
> P.O. Box 404011
> Louisville, KY 40233-4011
>
> **By Facsimile**:   1-866-763-9933

**To be bound to the Settlement Agreement as a Deemed Settlement Class Member, you must complete and submit this form by the deadline stated above.**

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

<u>IN THE UNITED STATES COURT OF FEDERAL CLAIMS</u>

**Notice of Proposed Final Settlement of Class Action
Against the United States**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

TO: [Name]
    [Address]
    Control Number: [###]

[INSERT BARCODE HERE]

## I.  <u>WHY ARE YOU RECEIVING THIS NOTICE?</u>

You are receiving this Notice because our records show that, in one or more of the 2002–2003 through 2009–2010 crop years, you were are a member of Sun-Maid Growers of California ("Sun-Maid") or the Raisin Bargaining Association ("RBA")—two grower-cooperatives that joined (or "opted in" to) the lawsuit entitled *Ciapessoni, et al. v. United States*, Case No. 1:15-cv-00938 (Fed. Cl.), in 2017 on behalf of their members—and that you did not in any other way previously provide a written statement expressing your intent to join or to opt in to this lawsuit. The purpose of this Notice is to inform you of a proposed settlement of this class-action litigation and of your legal rights with respect to the settlement. Capitalized terms in this Notice are defined in the parties' Settlement Agreement.  A copy of the Settlement Agreement, with its exhibits, is available at www.reserveraisinsclassaction.com.

> **Your legal rights are affected whether you act or do not act. Read this Notice carefully.**

To the extent that this Notice conflicts with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

<u>Background</u>

The lawsuit, *Ciapessoni, et al. v. United States*, was commenced by a group of plaintiffs in 2015 ("Plaintiffs" or "Class Representatives"). In the lawsuit, Plaintiffs sought just compensation from the United States Government for raisins produced by Class Members and subsequently ordered by the USDA to be set aside in "reserve pools" pursuant to the California Raisin Handling Order (the "Marketing Order"). The Plaintiffs allege that this "reserving" of raisins constituted a taking of private property for public use, which requires compensation under the Fifth Amendment to the United States Constitution.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit D
Page 1 of 11

This lawsuit's defendant, *i.e.*, the Government of the United States of America, denies that the raisin reserve requirement caused any unconstitutional taking requiring compensation and denies that the Class is entitled to any compensation for any such taking. The United States Government further contends that the lawsuit is barred, except as to claims concerning the 2009–2010 raisin crop year, by the applicable statutes of limitations. The Court determined that the only raisin crop years not barred by the statute of limitations are the 2002–2003, 2003–2004, 2005–2006, 2006–2007, 2007–2008, 2008–2009, and 2009–2010 crop years (the "Crop Years"). These seven Crop Years are the only crop years still at issue in this lawsuit. The United States Government has expressly reserved its right to appeal the Court's denial of its statute-of-limitations defenses, as to all the Crop Years other than the 2009–2010 Crop Year, if this lawsuit is not resolved by the proposed settlement.

In 2017, the Court certified this litigation as a class action and stated that only the following could "opt in" to or join this litigation as members of its "Class":

> All producers as defined in 7 C.F.R. § 989.11 and other persons as defined in 7 C.F.R. § 989.3 (collectively, "Producers") whose Natural Seedless raisins were acquired by handlers pursuant to 7 C.F.R. § 989.17 and set aside for the account of the Raisin Administrative Committee pursuant to 7 C.F.R. § 989.66(a) in the [Crop Years]; however, notwithstanding anything in this order to the contrary, this class shall exclude all Producers named as plaintiffs in *Evans v. United States*, No. 06-439 (Fed. Cl.), from any claim concerning a crop year prior to the 2007–2008 crop year.  For clarity: any Class claim(s) shall not concern a crop year other than the [Crop Years].

Plaintiffs subsequently sent notice of this certified class-action litigation by U.S. mail to 6,397 potential Class members identified by the parties and informed those potential Class members of their ability to "opt in" to the Class and that, unless they opted in, they would not be members of the Class. Plaintiffs also notified potential Class members of the litigation, and the need to opt in to be members of the Class, through radio and newspaper advertisement campaigns. In response, Plaintiffs received 4,182 completed opt-in forms. In addition, Sun-Maid and the RBA, two raisin-producer cooperatives, submitted opt-in forms on behalf of their members.[1] (All potential Class members that submitted opt-in forms in 2017, or on whose behalf Sun-Maid or the RBA submit opt-in forms in 2017, are collectively referred to in the Settlement Agreement and in this notice as the "Opt-In Class Members.")

---

[1] Sun-Maid's group opt-in excludes 13 raisin producers who are members of Sun-Maid but who affirmatively requested not to be included in Sun-Maid's group opt-in.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

To settle this lawsuit, Plaintiffs, on behalf of all Class members, and the United States Government have negotiated and signed a Settlement Agreement, which has already been preliminarily approved by the Court. Under the terms of this Settlement Agreement, the United States Government will pay $85,000,000.00 (the "Settlement Amount") to settle all the claims of all the Opt-In Class Members and to pay Plaintiffs' attorney fees and other fees and expenses associated with this litigation and settlement, as stated in the Settlement Agreement. All the potential Class members who submitted valid opt-in forms, or were opted in by Sun-Maid or by the RBA, are already Opt-In Class Members, meaning that they are already bound to, and will obtain the benefits of, the Settlement Agreement if it is finally approved by the Court and not subject to further appeal—and, as explained below, all Opt-In Class Members also have a set period of time to submit a written objection to any of the Settlement Agreement's terms.[2]

The Settlement Agreement, if finally approved by the Court and not subject to further appeal, also requires the United States Government to pay between $0.00 and $3,000,000.00 (the "Supplemental Settlement Amount") to settle all the potential claims of raisin producers that were potential Class members but are not the litigation's Plaintiffs, are not Opt-In Class Members, and are not parties to the related litigation, *Lion Farms, LLC v. United States*, (Fed. Cl. No. 1:15-cv-00915-LAS), and that, during a 30-day period allowed for by the Settlement Agreement, agree to be bound by the agreement ("Deemed Settlement Class Members"). The precise dollar value of the Supplemental Settlement Amount must be determined based upon the calculation explained in the Settlement Agreement's Exhibit B, paragraph 1. However, because the Supplemental Settlement Amount, used to pay any Deemed Settlement Class Members, is distinct from the Settlement Amount used to pay Opt-In Settlement Class Members, any payment to Deemed Settlement Class Members will not reduce at all any Opt-In Class Member's share of the Settlement Amount.  Thus, the agreement of any producer to be bound to the Settlement Agreement as a Deemed Settlement Class Member will in no way affect any amount to be received by any Opt-In Class Member.  Deemed Settlement Class Members' shares of the Supplemental Settlement Amount are also smaller, per ton of reserved raisins, than Opt-in Class Members' shares of the Settlement Amount, per ton of reserved raisins, in part because Deemed Settlement Class Members did not opt into the Class, can no longer opt into the Class, and are not Opt-In Class Members, but are being allowed to join in the settlement, if they agree to do so, to make the settlement more comprehensive. (Solely for convenience, all Opt-In Class Members, along with any and all Deemed Settlement Class Members, are collectively referred to in the Settlement Agreement and in this notice as the "Settlement Class Members.") In exchange for the United States Government's agreement to the Settlement Agreement, all Settlement Class Members release, waive, abandon,

---

[2] Sun-Maid and RBA members who did not submit individual opt-in forms will also have an opportunity to withdraw from the Settlement Class during the period for objecting to the Settlement Agreement.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit D
Page 3 of 11

and permanently discharge the United States Government from all "Released Claims," as defined by the Settlement Agreement (at Paragraph 1.EE).  Released Claims include all claims asserted by, arising under, or otherwise relating to the complaint in this class-action litigation and/or any amended version of that complaint.

The Settlement Agreement's terms described here were reached through extensive negotiations between Plaintiffs and the United States over a period of more than one year. The Plaintiffs and Class Counsel believe that the Settlement Agreement is fair, reasonable, and the best result for all Settlement Class Members. Class Counsel also retained the services of retired federal judge Oliver W. Wanger to review the dollar amount and other principal terms of the settlement. (Oliver Wanger served as a United States District Judge for the Eastern District of California in Fresno for over 20 years, from 1991 until his retirement in 2011.) Judge Wanger agrees that the Settlement Agreement is fair, just, reasonable, and in the best interest of all Settlement Class Members in light of the challenges and costs of ongoing litigation against the Federal Government.

## II.   WHAT ARE THE FINANCIAL TERMS OF THIS SETTLEMENT?

### A.   How much money will you receive?

Under the Settlement Agreement, your share of the Settlement Amount is determined based upon dividing the Settlement Agreement's assessed value of all your reserved raisins for the Crop Years (*i.e.*, all the reserved raisins that you delivered during the Crop Years) by the Settlement Agreement's assessed value of all the reserved raisins delivered by all the Opt-In Class Members during the Crop Years—with the resulting fraction expressed as a percentage that is then multiplied by the Settlement Amount already net of attorney fees and other fees and expenses associated with this litigation and settlement (*i.e.*, with such fees and expenses already deducted from the Settlement Amount), as stated in the Settlement Agreement. Also, if you have a debt to the Federal Government, that debt might be deducted from what you would otherwise recover from the settlement. The settlement administrator will then send to you, by check (see below), any positive amount resulting from the calculations just described. Further explanations of the calculations of the Opt-In Class Members' shares of the net Settlement Amount are in Exhibit A to the Settlement Agreement, available at www.reserveraisinsclassaction.com.

### B.   How will you be paid?

Any amount due to you would be paid to you by a check sent from the Settlement Administrator. Under the Settlement Agreement, if you do not cash your check within 365 days from the date that it is issued, the check will become void and the amount of the check will be returned to, and be the property of, the United States.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

### C.      Who will pay attorneys' fees and other expenses?

You will have no out-of-pocket obligation to pay any attorney fees or other fees and expenses associated with this lawsuit and settlement. Instead, the Settlement Amount and the Supplemental Settlement Amount (collectively, the "Common Fund") will pay for all those fees and costs. Class Counsel has proposed that the Court approve payment of attorney fees totaling up to 25% of the Common Fund amount. Class Counsel will also seek reimbursement from the Common Fund of reasonable and allowable litigation expenses, and will request payment from the Common Fund to compensate the Settlement Administrator, which handles administrative tasks related to the Settlement Agreement and payments from the Common Fund. In addition, this litigation's seven named Plaintiffs, who initiated this litigation and have served as its Class Representatives, will request a time-and-effort award of $12,500.00 each, totaling $87,500.00, for their assistance in this litigation, which will also be paid from the Common Fund. All these fees and expenses—including attorney fees, Settlement Administrator fees and expenses, and the time-and-effort award paid to Class Representatives—will be paid from the Common Fund, before any settlement shares are distributed to any Settlement Class Members. The funds for paying all such fees and expenses will be drawn, on a proportional basis, from the Settlement Amount and the Supplemental Settlement Amount that together make up the Common Fund, as explained in the Settlement Agreement's Exhibit A, paragraphs 1-2.

### D.      How much will Deemed Settlement Class Members receive, and will any payment to Deemed Settlement Class Members affect how much you receive?

As stated above, under the Settlement Agreement, each Deemed Settlement Class Member's share, per ton of reserved raisins, of the Supplemental Settlement Amount will be less than, and will not reduce, any Opt-In Class Member's share, per ton of reserved raisins, of the Settlement Amount. The calculation of the Deemed Settlement Class Members' shares of the Supplemental Settlement Amount are explained in the Settlement Agreement's Exhibit B.

## III.    <u>WHAT ARE YOUR RIGHTS?</u>

You have the right, for a limited period of time (explained below), to withdraw from the Settlement Class. If you withdraw from the Settlement Class you will not receive any money from this settlement. To withdraw from the Settlement Class, you must complete the attached Withdrawal Form and send the completed form by U.S. mail, **postmarked by [DATE]**, to the following address:

> Reserve Raisins Class Action
> c/o KCC Class Action Administration
> P.O. Box 404011
> Louisville, KY 40233-4011

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

If you decide <u>not</u> to withdraw from the Settlement Class, then you have the right, for a limited period of time (explained below), to object to any term of the Settlement Agreement and have the right to attend and to participate in a public hearing ("Fairness Hearing") on [DATE] at [TIME] before the Honorable Loren A. Smith, United States Court of Federal Claims Judge, at the United States Court of Federal Claims, Howard T. Markey National Courts Building, 717 Madison Place, NW [Room #], Washington, DC 20439. At this hearing, the parties will request that the Court finally approve the proposed settlement as fair, reasonable and adequate. Only Opt-In Class Members who have provided both timely written objections to the Settlement Agreement and timely written notices of their intention to participate in the Fairness Hearing will be permitted to so participate.

To submit an objection to the Settlement Agreement, your objection must be in writing, state whether the objection applies only to you, to a specific subset of the class, or to the entire class, state with specificity the grounds for the objection, and include your name, address, phone number, email address, and the control number printed under your address on page 1 of this notice. If you are represented by an attorney, you must also include the full name, address, phone number, and email address of your attorney in your written objection. If you wish to personally participate in the Fairness Hearing or if you wish to have your attorney do so, your written objection must include a request to participate in the Fairness Hearing, either in person or through your attorney. To be considered by the Court, all objections to the Settlement Agreement, and all requests to participate in the Fairness Hearing, must be sent by U.S. mail, **postmarked by [DATE]**, to the following address:

> Reserve Raisins Class Action
> c/o KCC Class Action Administration
> P.O. Box 404011
> Louisville, KY 40233-4011

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

**Your legal rights and options are summarized in the table below. Please note that your legal rights are affected whether you act or do not act.**

<u>**Read this Notice carefully. Please do not contact the Court directly.**</u>

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS CLASS ACTION | | YOUR DEADLINE |
|---|---|---|
| DO NOTHING AND PARTICIPATE IN THE SETTLEMENT | You are currently an Opt-In Class Member. You are not required to take any additional action to participate in this settlement, as an Opt-In Class Member, at this time. If the Court issues a final approval of the Settlement Agreement, and if that agreement as approved is no longer subject to further appeal, you will receive any share of the Settlement Amount due to you under the Settlement Agreement. | None |
| WITHDRAW FROM THE SETTLEMENT CLASS | As an Opt-In Class Member who did not submit an individual opt-in form, but on whose behalf Sun-Maid or the RBA submitted an opt-in form, you may elect to withdraw from the Settlement Class. If you withdraw from the Settlement Class, you will keep your rights, if any, to sue the United States Government separately, but you will receive no benefits from this lawsuit or the settlement of this lawsuit. In order to withdraw from the Settlement Class, you **must send** a completed Withdrawal Form—a copy of which is attached to this notice—by U.S. mail, **postmarked by [DATE]**, to the above address. | [To be set by Court] |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

| SUBMIT AN OBJECTION | As an Opt-In Class Member, you may (but are not required to) submit an objection to the Court about whether it should issue a final approval of the Settlement Agreement. Any objection must state in writing whether the objection applies only to you, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection, and include your name, address, phone number, email, and the control number printed under your address on page 1 of this notice. If you are represented by an attorney in submitting an objection, you must also identify the full name, address, phone number, and email of your attorney. To be considered by the Court, all objections to the Settlement Agreement must be sent by U.S. mail, **postmarked by [DATE]**, to the above address. | [To be set by Court] |
| SPEAK AT THE FAIRNESS HEARING TO OBJECT TO THE SETTLEMENT | As an Opt-In Class Member, if you submit a written objection, you or your attorney may also (but are not required to) appear in Court at the Fairness Hearing to speak about the fairness of the Settlement Agreement. If you intend to speak or to have your attorney speak at the Fairness Hearing, you must send a written objection (as stated above), and state in that objection that you intend either to appear personally at the Fairness Hearing or to be represented by your attorney (identified in the objection) at the Fairness Hearing. To participate in the Fairness Hearing, all such written notices must be sent by U.S. mail, **postmarked by [DATE]**, to the above address. | [To be set by Court] |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

Settlement Agreement, Exhibit D
Page 8 of 11

| CONTACT US | If you have questions, you may contact Class Counsel at any mailing address, or by using any email address, below.<br><br>Noah M. Schubert, Esq. (Co-Counsel)<br>Schubert Jonckheer & Kolbe LLP<br>3 Embarcadero Center, Suite 1650<br>San Francisco, CA 94111<br>(415) 788-4200<br>nschubert@sjk.law<br><br>Christopher M. Murphy, Esq. (Lead Counsel)<br>McDermott Will & Emery LLP<br>444 W. Lake Street, Suite 4000<br>Chicago, IL 60606-0029<br>(312) 372-2000<br>cmurphy@mwe.com<br><br>Please direct all inquiries to Class Counsel.<br><br>**Do NOT contact the Court directly.** | |

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

---

**By completing and returning this form, you will withdraw from the Settlement Class. Return this form <u>only</u> if you do not want to receive money.**

**If you wish to participate in and receive payment from this settlement, discard this form and <u>do not</u> return it.**

---

### Class Action Withdrawal Form

UNITED STATES COURT
OF FEDERAL CLAIMS

*Ciapessoni, et al. v. United States*
Case No. 1:15-cv-00938-LAS

[INSERT BARCODED ADDRESS HERE]

1.      Fill out this form completely and legibly. **It must be mailed to the Settlement Administrator (who has been retained by Class Counsel for this case and whose address is at Paragraph 3 below) and postmarked by [TBD].**

PLEASE NOTE: The Notice has been sent to your address based on information in the Government's, Sun-Maid's, or the RBA's records. Any person that signs on behalf of the recipient of this notice must have legal authority to do so. It is your responsibility to ensure that the information you provide on this form is complete and accurate, and that the person signing this form is legally authorized to bind the person or entity identified above.

2.      By signing your name in the space below, you are declaring under penalty of perjury under the laws of the United States and applicable state laws:

(a) That the recipient(s) of this notice **wish(es) to withdraw from the Class Action Settlement** described in the accompanying Notice (*Ciapessoni, et al. v. United States*) and understands that you will not be bound by and **<u>will not receive money</u>** from the Settlement; and

(b) That you are authorized to sign this document on behalf of the recipient(s) of this notice, agree to bind the recipient(s) of this notice, and agree to serve as the point of contact for purposes of this litigation for the recipient(s) of this notice.

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.

**By signing this form, you are declaring that you do not wish to participate and <u>do not</u> wish to receive money from this settlement:**

**Sign Your Name**: _____     **Date**:_____

**Print Your Name**: _____

**Print Your Address**: _____

**Telephone Number**: ___ _____

**Email Address**: _____


3.       To withdraw from this settlement, this form must be submitted by mail to:

            Reserve Raisins Class Action
            c/o KCC Class Action Administration
            P.O. Box 404011
            Louisville, KY 40233-4011


**If you wish to participate in this settlement and receive money, discard this form and <u>do not</u> return it.**

Questions? Visit www.reserveraisinsclassaction.com or call 1-866-763-9930.